**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STARR INDEMNITY & LIABILITY COMPANY, ) ) ) Plaintiff, ) ) v. ) ) BRIGHTSTAR CORP., et al., ) ) ) Defendants. ) ) | CASE NO. 1:13-cv-08580-GHW-GWG  ORAL ARGUMENT REQUESTED |

**BRIGHTSTAR CORP. & BRIGHTSTAR GERMANY GmbH'S REPLY**
**MEMORANDUM IN SUPPORT OF THEIR MOTION TO TRANSFER**

Defendants Brightstar Corp. and Brightstar Germany GmbH (collectively, "Brightstar") submit this Reply Brief in Support of their Motion to Transfer this action to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a).

**INTRODUCTION**

Brightstar's opening memorandum asserted that only one witness with personal knowledge of material facts resided in New York. That is no longer the case. Based on Starr's opposition brief, *no* material witnesses reside in New York. None of Starr's witnesses have any personal knowledge regarding the loss itself or Brightstar's damages. Only one of Starr's witnesses, Jeffrey Factor, has personal knowledge related to negotiations for and the terms of the policy. At the time of his deposition, Mr. Factor lived in New York. He no longer does. According to Starr, he lives somewhere in New Jersey. (Dkt. #118 at p. 18). That means there are no witnesses with personal knowledge of any material facts who reside in New York.

In light of these facts, Starr grasps at straws. It spends pages upon pages of its opposition brief trying to justify its obvious forum shopping, arguing that New York law should apply,[1] and listing people who work in its claim department and live in or work out of New York – none of whom were involved in or have personal knowledge of the negotiations for or issuance of the relevant insurance to Brightstar, the loss, or Brightstar's damages. Starr reaches back to 2011 to find a theoretical witness who might reside in New York from Marsh, a past broker; however, the events at issue in this lawsuit surround the 2012 and 2013 renewal and the loss in 2013, and Starr admits, "Arthur J. Gallagher & Co. in Miami, Florida was the insurance broker for Brightstar at all relevant times in 2012 and 2013, including the time of the annual adjustments in March 2012 and March 2013." (Dkt. 118 at p. 3). In its most desperate overreach, Starr relies on forum selection clauses in different insurance policies issued by other insurers that are no longer at issue; namely, Starr relies on forum selection clauses in the excess insurers' policies that were at issue in now-dismissed, separate lawsuits filed months after Starr's preemptive suit.

Regardless of what forum selection language might be included in an irrelevant insurance policy issued by a different insurance company that was subject to a now-dismissed lawsuit, the following facts require the transfer of this case to the Southern District of Florida: (1) Starr filed this action in New York seeking to avoid coverage the day after it told Brightstar in writing that it had "not made a coverage determination concerning the claimed loss"; (2) the relevant insurance renewal was negotiated and procured from Florida by witnesses who reside in Florida; (3) no Starr employee or potential witness has any personal knowledge of the loss or Brightstar's damages; (4) most of the material witnesses reside in Florida and are subject to compulsory

---

[1] Brightstar disputes that New York law applies and that the relevant insurance was "made" in New York. However, governing law is one of many factors relevant to transfer and is less important in the analysis than the location of material witnesses. Brightstar will address the issue of choice of law in connection with the upcoming summary judgment motions and not here because the other factors so clearly favor transfer.

process there rather than New York; (5) no material witnesses reside in New York; and (6) Florida has a stronger public interest in protecting its insured citizens, like Brightstar, than New York has in protecting insurers from paying claims to its out-of-state insureds.

## ARGUMENT

### I.     The Interests of Justice Support Transfer

The interests of justice demand transfer to Florida.  No matter how hard Starr tries to excuse its conduct, the facts make clear that Starr's goal was to "win [ ] a race to the courthouse which it had completed before its adversary had even heard the starting gun." *Continental Ins. Cos. v. Wickes Cos., Inc.*, No. 90 CIV. 8215 (KMW), 1991 WL 183771 at *5 (S.D.N.Y. Sept. 6, 1991).  Starr knows that it forum shopped, as evidenced by its efforts to now justify its actions over approximately five pages of its opposition brief, but to no avail.  Starr cannot and does not dispute that, on December 2, 2013, Starr sent Brightstar a letter saying it had not yet made a coverage determination and required further information, and then, the next day, sued Brightstar alleging it had no duty to provide coverage.  (Dep. Ex. 272 at p. 7).

Starr pleads that its conduct was not intended to lull Brightstar into a false sense of security so Starr could file suit in New York first. According to Starr, it was Starr's incompetence, not its malevolence, which created a series of events that "may raise questions at first glance." (Dkt. 118 at p. 7).  Starr argues its high-level decision makers simply had no idea what the other was thinking or doing.  So, the story goes, the executive who decided to file suit had no idea his colleague had issued a reservation of rights letter just hours earlier telling Brightstar that Starr was not sure whether coverage existed and was still investigating.  Even if this story were true, it would not prove that Starr's preemptive suit was not forum shopping. To the contrary, it would prove that Starr was so focused on being sure to file first to avoid being sued in Florida that it *intended* to race to the courthouse and file suit against its insured without

3

*ever* bothering to tell Brightstar it had decided to decline coverage. Starr was ***trying*** to keep that a secret, disclosed only upon filing suit. It was a mere accident that Starr issued any reservation of rights letter at all.

As noted in Brightstar's opening memorandum, Starr's forum shopping is a special circumstance that supports transfer. The *Wickes* case is applicable here. *Continental Ins. Cos. v. Wickes Cos., Inc.*, No. 90 CIV. 8215 (KMW), 1991 WL 183771 *1 (S.D.N.Y. Sept. 6, 1991). In *Wickes*, like here, the insurer "raced" to file a declaratory judgment action just one day after mailing a letter to the insured advising that it was denying coverage. *Id.* at *6. Judge Wood found that the insurer's obvious forum shopping warranted transfer and consolidation of the insurer's first-filed action with a later-filed action in another venue. *Id.* Thus, not only is *Wickes* factually similar to what Starr did here, but more importantly, it sets forth the principle that insurance companies should not be rewarded for tactics like those Starr employed here.

Starr seeks to avoid *Wickes* by seeking to limit the import of its ruling to cases where there are two competing actions. In other words, Starr argues that, to get the benefit of the equitable principles described in *Wickes,* Brightstar should have raced to the courthouse itself (or should tomorrow) to set up competing actions so that this Court can grant its transfer motion. Starr's argument elevates form over substance. There is no practical reason why an insured should be required to first initiate a lawsuit in another forum and then move to transfer the preemptive declaratory judgment action to that forum, rather than only moving to transfer, as Brightstar did here. Nothing in *Wickes* (or any case on which Starr relies) says that gamesmanship and forum shopping should be ignored when deciding a Section 1404(a) motion, unless there are competing actions. Indeed, such a rule would make little sense, would encourage counter-gamesmanship, and be inconsistent with Section 1404(a), which does not

limit the transfer of an action to circumstances only where another related action is already pending.

Starr misses the point of the *Wickes* "special circumstances" rule, which is that even the rule favoring the first filed of two lawsuits can be overcome where the first filed lawsuit is a preemptive declaratory judgment action by an insurance company seeking to deprive the policyholder of its preferred venue. *See also*, *e.g.*, *Herbert Ltd. P'ship v. Elec. Arts Inc.*, 325 F. Supp. 2d 282, 292 (S.D.N.Y. 2004) ("An anticipatory filing is improper when it attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose.") (internal quotation and citation omitted). Thus, Starr cannot hide behind its choice of forum and the first filed rule to avoid transfer. *Id*. (Ignoring the first-filed rule and deciding the motion to transfer based on the balance of conveniences).[2]

Similarly, Starr's decision to file suit in the way it did, distinguishes this case from the case cited by Starr in support of its argument that it did not forum shop, *American Alliance Insurance Company v. Sunbeam*, (Dkt. #118 at p. 13). In that case, the court noted that the insurance company "waited one month before filing suit" after denying coverage and, thus, did not find that case to be a situation where "the declaratory judgment action [was used] as a tool for gamesmanship and manipulation." 1999 WL 38183 at *9 (S.D.N.Y. Jan. 28, 1999). In contrast, Starr hardly waited one day. Starr's forum shopping was intended to circumvent Florida insurance coverage law, Florida public policy, and to avoid the application of Florida Statute § 627.428.[3]

---

[2] Starr contends that the first-filed/second-filed *Wickes* analysis is inapplicable (Dkt. #118 at p. 12), but then contends its choice of forum should be given "considerable weight" (*Id.* at p. 16). The weight to be given the plaintiff's choice of forum necessarily depends on whether its lawsuit was an improper "anticipatory filing." *Herbert Ltd.*, 325 F.Supp.2d at 292.

[3] Starr argues that this statute would not have applied even if Brightstar filed in Florida. As evidenced by Starr's own cases that it relies on for this argument, if Florida law governs the 2013 policy, which was delivered in Florida and not New York, this statute would apply to the dispute in a Florida court.

Starr's preemptive forum shopping can and should be considered by the Court in its discretion when deciding whether to transfer this case. Moreover, and as discussed herein, Florida has more substantial contacts than New York and thus the interests of justice also favor transfer. *See e.g. Riviera Trading Corp. v. Oakley, Inc.,* 944 F. Supp. 1150, 1159 (S.D.N.Y.1996) (favoring transfer of an action in the interests of justice when the moving party presents more substantial contacts in the proposed forum with the subject matter from which the claim arises).

**II.     Florida is the Location of Operative Facts and Most of the Material Witnesses**

Most of the relevant events occurred in Florida. As explained in Brightstar's opening memorandum, the relevant insurance renewals and endorsements were negotiated by Brightstar out of its headquarters in Florida in conjunction with its Miami-based broker, Arthur J. Gallagher & Co. ("AJG"). The endorsements were delivered in Florida and the premiums paid in Florida. The loss occurred in Germany, but its effects were ultimately felt by the parent company, Brightstar Corp., in Florida. (*See, e.g.,* OF Aff. at ¶¶ 4-7; Dep. Ex. 133 at ¶¶ 10-12; Rodriguez Dep. p. 344:4-7 & 365:15-20). In fact, Starr admits that AJG in Miami "was the insurance broker for Brightstar at all relevant times in 2012 and 2013." (Dkt. #118 at p. 3). Thus, not surprisingly, almost all of the material events have some connection to Florida and the material witnesses reside in Florida and not New York.

"The convenience of party and nonparty witnesses is usually the most important consideration in deciding a motion to transfer venue." *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.*, 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004); *see also U.S. Fidelity & Guar. Co. v. Republic Drug Co., Inc.*, 800 F. Supp. 1076, 1080 (E.D.N.Y. 1992). The clear majority of witnesses with personal knowledge of material facts (both party and non-party) reside in Florida and not New York. They are subject to subpoena in Miami, but not in New York. A trial in

Florida is also more convenient and economical for these witnesses than New York. The following chart highlights how this key factor favors transfer to Florida:

| Material Witness | Key Topics | Are they a party? | State of Residency |
|---|---|---|---|
| Robin Thompson | 2013 policy and terms | No | Florida |
| Lisa Rodriguez | 2013 policy and terms | No | Florida |
| Kevin O'Brien | 2013 policy; terms; loss | No | Florida |
| Enrique Rodriguez[4] | 2013 policy | No | Florida |
| Alex de la Cal | loss | No | Florida |
| Arturo Osorio | loss | No | Florida |
| Jeff Factor[5] | 2013 policy and terms | No | New Jersey |
| Oscar Fumagali | 2013 policy; terms; loss; damages | Yes | Florida |
| Peter Scrobe[6] | 2013 policy and terms | Yes | Florida |

Not one of these witnesses lives in New York. Starr identifies only one potential Starr witness who lives in New York, Charles Capozzoli. Mr. Capozzoli was not involved in negotiating or issuing the policy. Nor does he have any personal knowledge of the loss or Brightstar's damages. Mr. Capozzoli is the Starr executive who decided to file this preemptive suit in New York on December 3, 2013, intending to do so before ever telling Brightstar he had concluded Starr would deny coverage. This conduct, while relevant to this motion, does not

---

[4] There is a possibility that Mr. Rodriguez lives in Virginia.
[5] Brightstar was not aware of Mr. Factor's recent departure from Starr until Starr's opposition brief.
[6] Though Mr. Scrobe lives in Florida, he submitted an affidavit that a trial in New York would not be inconvenient for him. (Dkt. #117). Of course, he did not affirm that testifying in Florida would be inconvenient. Moreover, if Mr. Scrobe is not employed by Starr at the time of trial, it is undisputed that he would be outside the subpoena power of this Court. (Dkt. #118 at p. 19). In addition, Brightstar did not misidentify Mr. Scrobe as Starr alleges. (Dkt. #118 at p. 18). Brightstar stated: "Peter Scrobe, a Starr employee who lives in Fort Meyers, Florida." (Dkt. #108-1, p. 9; see also p. 13). Brightstar concedes it mistakenly included Peter Scrobe in a list of Florida non-party witnesses later in the page.

make Mr. Capozzoli a material witness. He has no personal knowledge of any material fact to offer at trial. Thus, Starr's only "New York" witness is immaterial to the transfer analysis.

Starr also lists various other people in its claim department whom had something to do with Brightstar's claim and who might live in New York (though that is not established by Starr's opposition brief). Here again, however, none of these individuals have personal knowledge of relevant facts. The fact that they participated in an investigation of the loss through an international third party investigation company does not make them competent to testify regarding the results of the investigation at trial. They are claims handlers; not material witnesses. (*See, e.g,* Dkt. #116; Connelly Dep. p. 253:24-254:1).

Starr seeks to manufacture a New York connection through Brightstar's former broker, Marsh, who was involved in procuring the initial policy in 2011. (Dkt. #118, p. 3). However, the portions of the policy relevant to this dispute were negotiated and issued during the renewal process after Marsh was no longer Brightstar's broker. Starr's opposition brief concedes this: "Arthur J. Gallagher & Co. in Miami, Florida was the insurance broker for Brightstar at all relevant times in 2012 and 2013, including the time of the annual adjustments in March 2012 and March 2013." (Dkt. #118 at p. 3). Therefore, the alleged New York connections to the 2011 policy through Marsh are immaterial.

Starr also relies on the fact that Brightstar has a joint defense agreement with Arthur J. Gallagher ("AJG") in an attempt to discount the key role the Florida brokers will play at trial. (Dkt. #118, pp. 2, 26). However, that agreement does not apply to the material witnesses individually, Ms. Rodriguez and Ms. Thompson. Thus, if they do not personally agree to attend trial and/or are no longer employed by AJG at the time of trial, they too would be outside the power of this Court.

In light of the lack of material witnesses and facts that relate to New York, as evidenced above, Starr quite remarkably tries to rely on the forum selection clauses found in the excess insurance policies. (Dkt. #118, p. 1). This argument is completely irrelevant. Starr's policy – the one relevant to this action – does not contain such a forum clause. Starr also filed this action months before the excess carriers filed their lawsuits that were later consolidated with this action. Moreover, Brightstar settled with the excess carriers and their lawsuits have been dismissed, so the forum selection clauses in the excess policies have nothing to do with whether a transfer is now appropriate as to Starr's claims.

### III.   This Case Could Have Been Brought in Florida

Starr argues the case should not be transferred because Brightstar Germany has not established that it would have been subject to jurisdiction in Florida for purposes of this action. Notably, Starr does not contend that Brightstar Germany was ***not*** subject to jurisdiction in Florida when it filed this action. Starr contends only that Brightstar Germany has not put forth sufficient evidence on this point. Starr is wrong. As an initial matter, Brightstar Germany may submit itself to the jurisdiction of the Florida court for this action and is doing so by seeking to transfer the case to the Southern District of Florida. Beyond that, however, the record demonstrates sufficient connections to Florida to establish that this action could have been brought against Brightstar Germany in Florida pursuant to Florida's long arm statute, Florida Statute §48.193, among them:  it is a subsidiary to Brightstar Corp. headquartered in Florida (as even alleged by Starr in Starr's Complaint) (Doc. 1, ¶5); Brightstar's director, Mr. Fumagali, resides in Florida (Docs. 108-4 & 108-9); Mr. Fumagali procured the insurance on Brightstar Germany's behalf in Florida; and it is an additional insured on the Starr policy, which was procured and purchased in Florida through its Miami-based broker, AJG. (OF Aff. at ¶¶ 4-7; Dep. Ex. 133 at ¶¶ 10-12; Rodriguez Dep. p. 344:4-7 & 365:15-20). Notably, Starr thought

9

Brightstar Germany's connections to New York – though far more limited – were sufficient to establish jurisdiction in this Court. Starr specifically relied on Brightstar Germany's transaction of business through AJG to support jurisdiction. (Doc. 1, ¶¶ 12, 21). Starr's argument has no merit. This case could have been brought in the Southern District of Florida and thus meets the first step of the transfer analysis.

### IV. Transfer Now is Appropriate

Starr points out that Brightstar did not assert improper venue or file a competing suit (Doc. 118, p. 8), but that does not bar seeking relief pursuant to §1404(a) now. Courts have ordered transfer to take effect after the close of discovery, but before trial, like Brightstar is seeking here. *See e.g. Apache Prods. Co. v. Employers Ins. of Wausau*, 154 F.R.D. 650 (S.D. Miss. 1994). Discovery occurs where the witnesses and documents reside. Trial occurs in court. Now that fact discovery is closed, the material witnesses have been identified, and the only remaining insurer left in this coverage dispute is Starr, it is clear that the Southern District of Florida is the proper forum for the trial of this case.

## CONCLUSION

For the foregoing reasons and those raised in Brightstar's opening brief, this case should be transferred to the Southern District of Florida.

| | |
|---|---|
| Dated:  May 11, 2018 | **BARNES & THORNBURG LLP**<br><br>/s/ _____<br>Mark L. Durbin<br>One North Wacker Drive, Suite 4400<br>Chicago, IL  60606-2833<br>mdurbin@btlaw.com<br><br>Charles P. Edwards<br>11 South Meridian Street<br>Indianapolis, IN  46204<br>cedwards@btlaw.com<br><br>Kara Cleary<br>3475 Piedmont Road, N.E., Suite 1700<br>Atlanta, GA 30341<br>kcleary@btlaw.com<br><br><br>**ANDERSON KILL P.C.**<br><br>Dennis Nolan<br>Vivian Costandy Michael<br>1251 Avenue of the Americas<br>New York, NY 10020<br>dnolan@andersonkill.com<br>vmichael@andersonkill.com<br><br><br>**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**<br><br>Valerie Jackson<br>9300 S. Dadeland Blvd., 4th Floor<br>Miami, FL 33156<br>valerie.jackson@qpwblaw.com<br><br>*Attorneys for Brightstar* |

DMS 12348089v1