UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STARR INDEMNITY & LIABILITY COMPANY,

                Plaintiff,

vs.                                      13 Civ. 8580 (GWG)

BRIGHTSTAR CORP. and
BRIGHTSTAR GERMANY GmbH,

                Defendants.

**PLAINTIFF'S STATEMENT OF UNDISPUTED**
**MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1(a)**

Plaintiff Starr Indemnity & Liability Company, by and through its attorneys and pursuant to Local Civil Rule 56.1(a), submits this Statement of Undisputed Material Facts in support of its Motion for Partial Summary Judgment.

1. Starr Indemnity & Liability Company insured Brightstar Corp. and Brightstar Germany GmbH (collectively, "Brightstar") under the terms and conditions of an open marine cargo policy (the "Policy"). Ex. 3.[1]

2. Brightstar submitted a claim to Starr seeking to recover $25 million under the Policy for the loss of Brightstar's wireless communication devices that were stored at a warehouse in Germany (the "German Warehouse"). Ex. 38 at STARR FRF 429.

3. A true and correct copy of the Policy is attached as Exhibit "3" to the Declaration of Kevin J.B. O'Malley in Support of Plaintiff's Motion for Partial Summary Judgment executed on May 25, 2018. Ex. 3.

---

[1] Ex. "__" refers to the exhibits attached to the Declaration of Kevin J.B. O'Malley in Support of Plaintiff's Motion for Partial Summary Judgment executed on May 25, 2018.

4. The Policy was continuous until cancelled and coverage first attached under the Policy on and after March 26, 2011. Ex. 3 at STARR 15574, cl. 4; Ex. 1 ¶ 23; Ex. 2 (Amended Answer) ¶ 23.

5. Certain terms and conditions were thereafter adjusted by endorsement, including on an annual basis. Ex. 1 ¶ 23; Ex. 2 (Amended Answer) ¶ 23; Ex. 3.

6. The annual adjustments were not renewals. Ex. 48 at 32; Ex. 52 at 156, 167 & 214; Ex. 53 at 34-37.

7. The Policy's most recent annual adjustment prior to the loss was effective on and after March 26, 2013. Ex. 1 ¶ 24; Ex. 2 (Amended Answer) ¶ 24.

8. Brightstar Corp.'s principal place of business is in Florida. Ex. 1 ¶ 3; Ex 2 (Amended Answer) ¶ 3.

9. Brightstar Germany's exclusive place of business was in Germany. Ex. 1 ¶ 4; Ex 2 (Amended Answer) ¶ 4; Ex. 2 (Counterclaim) ¶ 86.

10. Starr's principal place of business is in New York. Ex. 46 ¶ 8.

11. Starr's performance under the Policy (*e.g.*, payment of covered claims) was done from New York. Ex. 46 ¶ 10.

12. Premium payments for the Policy were made to Starr in New York. Ex. 46 ¶ 9.

13. Marsh in New York was the insurance broker for Brightstar in 2011. Ex. 1 ¶ 18; Ex. 2 (Amended Answer) ¶ 18; Ex. 49 at 18-19.

14. Marsh negotiated the insurance contract on behalf of Brightstar with Starr in New York. Ex. 4; Ex. 5; Ex. 46 ¶ 8; Ex. 49 at 18-19, 62-65 & 68-71.

15. It was the New York offices of Marsh and Starr that negotiated the Policy. Ex. 4; Ex. 5; Ex. 46 ¶ 8; Ex. 49 at 18-19, 62-65 & 68-71.

16. Marsh sent an order to bind coverage from New York to Starr in New York on behalf of Brightstar on March 25, 2011.  Ex. 4 at MARSH00421.

17. The underwriter in Starr's New York office responded to Marsh on March 25, 2011 in an e-mail stating, "As we have discussed I have confirmed the Brightstar renewal in Marshcargo.com."  Ex. 4 at MARSH420.

18. The binder was sent to Marsh in New York by the underwriter in Starr's New York office on March 25, 2011.  Ex. 4 at MARSH420.

19. Marsh drafted the Policy and submitted it to Starr in New York.  Ex. 5 at MARSH00303; Ex. 46 ¶ 8; Ex. 49 at 64-65 & 68-71.

20. Arthur J. Gallagher & Co. replaced Marsh as Brightstar's broker of record as of January 10, 2012.  Ex. 7.

21. Endorsement No. 17 to the Policy was the warehouse coverage endorsement that was issued in connection with the annual adjustment of the Policy effective March 26, 2012.  Ex. 3 at STARR 15638-44.

22. Endorsement No. 17 states, in relevant part:

> 1. Attaching on all goods and merchandise as described above at the risk of the Insured on or after March 26, 2012.
>
> * * *
>
> 10. The un-named location limit of $3,000,000 is provided without prior approval, with the exception of the 150 Hartlauer and 20 Hutchinson shops in Austria that are limited to an aggregate of $1,500,000 for all shops combined, at any one time.
>
> 11. Notwithstanding anything else stated in the policy or other endorsements thereto, the most This Company agrees to pay of a claim made under this endorsement are those limits of liability in the schedule below:

> [The endorsement then includes a schedule with columns entitled "Country," "Entity Name," "Address" and "Limit of Liability." There are numerous locations named in the schedule.]
>
> 12.     Automatic coverage up to $25,000,000 (S50,000,000 for Brightstar/Tech Data Europe locations) is provided for new locations upon an affirmative representation of specific location minimum standards noted below, subject to receipt of quarterly statement of values.
>
> [The endorsement then enumerates the minimum standards, which are discussed below.]

Ex. 3 at STARR 15638-44.

23.     Under Endorsement No. 17, "[a]utomatic coverage up to $25,000,000 ... is provided for new locations upon an affirmative representation of specific location minimum standards noted [in the endorsement], subject to receipt of quarterly statement of values." Ex. 3 at STARR 15643, cl. 12.

24.     The minimum standards stated in Endorsement No. 17 include:

- Facility equipped with central station alarm - hot wired to local police and alarm company with line security

- Facility protected by guards 24/7 with call in times to a central station every hour - after hours, weekends, and holidays

Ex. 3 at STARR 15644.

25.     There is no evidence that there was a central station alarm at the German Warehouse or that such an alarm was hot wired to local police and alarm company with line security.

26.     There is no evidence that the guards at the German Warehouse had call in times to a central station every hour - after hours, weekends and holidays.

27. The named locations covered under Endorsement No. 17 were identified in a schedule in Clause 11 of the endorsement with corresponding and varying limits of liability stated next to each location. Ex. 3 at STARR 15639-43, cl. 11.

28. There was no provision in Endorsement No. 17 for adding a new named location to the schedule in Clause 11. Ex. 3 at STARR 15638-44; Ex. 47 at 365-70.

29. There was no provision in the Policy for adding a new named location to the schedule in Clause 11 in Endorsement No. 17. Ex. 3; Ex. 47 at 365-70.

30. Starr would confirm its agreement to add a new named location by issuing an endorsement amending Clause 11 in Endorsement No. 17. Ex. 3 (Endorsement Nos. 22, 24, 26, 27 & 29-34).

31. No endorsement was ever issued amending Clause 11 in Endorsement No. 17 to add the German Warehouse to the schedule in Clause 11. Ex. 3.

32. Starr never assented to add the German Warehouse to the Policy under Endorsement No. 17. Ex. 39 at STARR CL000004.

33. There is no evidence that Starr manifested its assent to add the German Warehouse to the schedule in Clause 11 in Endorsement No. 17. Ex. 39 at STARR CL000004.

34. Jeffrey Factor, an underwriter at Starr, sent an e-mail to Robin Thompson at Gallagher on July 23, 2012 stating:

> Before we can add a location to the schedule, we need the following:
> Full Name
> Complete Address
> COPE Details
> Limit Required
> Current value of inventory
> Also, once added, we will need contact details for a possible survey.

Ex. 8.

35. Brightstar had received similar advices from Gallagher and Marsh on prior occasions.  Ex. 9 at STARR 3036-37; Ex. 6 at MARSH919.

36. Endorsement No. 40 to the Policy was the warehouse coverage endorsement that was issued in connection with the annual adjustment effective March 26, 2013.  Ex. 3 at STARR 15701-04.

37. Endorsement No. 40 states, in relevant part:

> 1. Effective March 26, 2013, Endorsement 17 Warehouse Endorsement, and all subsequent warehouse endorsements are replaced with the:
>
> * * *
>
> 8. Attaching on all goods and merchandise as described above at the risk of the Insured on or after March 26, 2013.
>
> Notwithstanding anything else stated in the policy or other endorsements thereto, the most This Company agrees to pay of a claim made under this endorsement are those limits of liability in the schedule below:
>
> $25,000,000 Limit per occurrence at all locations as per schedule on file with underwriters, subject to Quarterly Statement of Values Report with actual values in storage at each location.
>
> $25,000,000 Limit per occurrence for all newly locations (maximum 90 days to report) if they meet the minimum standards, as stated below.
>
> Upon notification of any new location, Starr Marine will order a loss control survey and forward the resulting recommendations for compliance as soon as received.
>
> $3,000,000 Limit per occurrence for any unnamed/unscheduled location.
>
> [The endorsement then enumerates the minimum standards, which are discussed below.]

6

Ex. 3 at STARR 15701-04.

38. Endorsement No. 40 provides a "$25,000,000 Limit per occurrence for all newly locations (maximum 90 days to report) if they meet the minimum standards, as stated [in the endorsement]."  Ex. 3 at STARR 15702.

39. The minimum standards stated in Endorsement No. 40 include:

- Facility equipped with Central Station Alarm - hot wired to local police and Alarm Company with line security

- Facility protected by guards 24/7 ... with call in times to a central station every hour - after hours, weekends, and holidays

Ex. 3 at STARR 15703.

40. There is no evidence that there was a central station alarm at the German Warehouse or that such an alarm was hot wired to local police and alarm company with line security.

41. There is no evidence that the guards at the German Warehouse had call in times to a central station every hour - after hours, weekends and holidays.

42. Endorsement No. 40 provides a "$25,000,000 Limit per occurrence at all locations as per schedule on file with underwriters, subject to Quarterly Statement of Values Report with actual values in storage at each location."  Ex. 3 at STARR 15702.

43. Robin Thompson at Gallagher sent Jeffrey Factor at Starr an e-mail on February 11, 2013, stating, in relevant part:

> Following your conversation with Lisa [Rodriguez], attached please find the above insured's Master Exposure Spreadsheet with information we have received to date for the renewal.

Ex. 10.

7

44. The German Warehouse was not on the Master Exposure Spreadsheet attached to Ms. Thompson's e-mail of February 11, 2013.  Ex. 10.

45. Gallagher sent Starr another spreadsheet on February 11, 2013 under cover of an e-mail stating: "Please find the most up to date SOV."  Ex. 11.

46. The German Warehouse was not on this SOV.  Ex. 11.

47. Gallagher sent Starr another spreadsheet on February 11, 2013 stating: "... attached please find . . . insured's Master Exposure Spreadsheet with information we have received to date …."  Ex. 12.

48. The German Warehouse was not on this spreadsheet.  Ex. 12.

49. Mr. Factor sent an e-mail to Lisa Rodriguez at Gallagher on March 19, 2013, stating, in relevant part:

> As discussed, we can agree to a FLAT warehouse premium of $1,750,000. All locations currently listed with values (see attached schedule which I took from your SOV) have a $25M limit (please confirm that all locations are listed). All new locations will have a $25M limit if [they] meet the minimum standards, but additional premium will be paid at a rate of $750 per $1M of estimated maximum value, plus an unspecified CAT surcharge if applicable.
>
> Note that we will still need the actual values in storage, and we need to agree to a penalty for non-compliance, but the policy will not be rated off these values.
>
> See attached spreadsheet. All fields in yellow need to be addressed.

Ex. 14.

50. The German Warehouse was not on the schedule attached to Mr. Factor's e-mail of March 19, 2013.  Ex. 14.

8

51. Mr. Factor sent a revised quote for the annual adjustment effective March 26, 2013 to Gallagher on March 21, 2013 that attached a sample quarterly SOV spreadsheet with the filename "Brightstar 2013-2014 Quarterly SOV."  Ex. 16.

52. The sample quarterly SOV spreadsheet attached to Mr. Factor's e-mail of March 21, 2013 identified numerous locations but did not include the German Warehouse.  Ex. 16.

53. Gallagher sent an e-mail to Mr. Factor on March 25, 2013 stating: "Please bind the insured's renewal [ ] coverage as per your revised quote dated 3/21/13 ...."  Ex. 17 at STARR 4753.

54. Gallagher did not advise Starr in its March 25, 2013 e-mail that the German Warehouse needed to be added as a scheduled location.  Ex. 17 at STARR 4753; Ex. 39 at STARR CL00004.

55. Mr. Factor sent an e-mail to Gallagher on March 26, 2013 stating: "Thank you once again for the order to bind.  Please see our binder attached."  The binder contained, among other things, the agreed terms and conditions of the warehouse coverage effective March 26, 2013.  Ex. 17 at STARR 4750 & STARR 4757 - STARR 4765.

56. There was no provision in Endorsement No. 40 for adding a new location to the "schedule on file" with Starr.  Ex. 3 at STARR 15701-04; Ex. 47 at 365-70.

57. There was no provision in the Policy for adding a new location to the "schedule on file" with Starr.  Ex. 3; Ex. 47 at 365-70.

58. If Starr accepted the new location, it would confirm its acceptance in writing and an additional premium would be charged if the location had an inventory value in excess of $3 million.  Ex. 23A, B & C; Ex. 24A &B; Ex. 26A & B; Ex. 27; Ex. 28; Ex. 52 at 117-19, 173-75 & 205; Ex. 40 at STARR 12702.

59. Starr never accepted the German Warehouse in writing or otherwise or agreed to add the German Warehouse to the "schedule on file" with Starr under Endorsement No. 40. Ex. 39 at STARR CL00004.

60. There is no evidence that Starr ever assented to the German Warehouse being added to the "schedule on file." Ex. 39 at STARR CL00004.

61. The Policy contains an Errors and Omissions clause that states:

> This policy shall not be vitiated by any unintentional delay, error, omission or oversight in making any declaration that is required to be made under any provision contained in or endorsed on this policy provided a correct declaration is communicated to This Insurer as soon as practicable after the delay, error, omission or oversight becomes known to The Insured's corporate risk manager or equivalent, and premium paid, if required by This Insurer.

Ex. 3 at STARR 15577, cl. 11.

62. Brightstar has admitted that its wireless communication devices were misappropriated by getgoods.de Vertriebs GmbH. ECF Doc. 123; Ex. 2 (Counterclaim) ¶ 51.

63. Each of the warehouse endorsements in the Policy contains the following provision:

> 3. Notwithstanding anything contained elsewhere herein to the contrary, this policy shall not pay for loss of or damage to the goods and merchandise while covered under this endorsement caused by or resulting from:
>
> * * *
>
> b. Misappropriation, secretion, conversion, infidelity or any dishonest act done by or at the instigation of the Assured at any time during the currency of this coverage, or by the Assured or other party of interest, his or their employees or agents while insured merchandise is stored in warehouses or stores, owned, leased or controlled by the Assured.

Ex. 3 at STARR 15604, 15638 & 15701.

10

Dated: New York, New York
       May 25, 2018

                          NICOLETTI HORNIG & SWEENEY
                          *Attorneys for Plaintiff*

          By:    S/ John A.V. Nicoletti
                   John A.V. Nicoletti
                   Nooshin Namazi
                   Kevin J.B. O'Malley
                   Wall Street Plaza
                   88 Pine Street, Seventh Floor
                   New York, New York 10005
                   (212) 220-3830
                   jnicoletti@nicolettihornig.com
                   nnamazi@nicolettihornig.com
                   komalley@nicolettihornig.com