UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

STARR INDEMNITY & LIABILITY COMPANY, :

                              Plaintiff,        :       OPINION AND ORDER

                  -v.-                   :
                                        13 Civ. 8580 (GHW) (GWG)

BRIGHTSTAR CORP., et al.,           :

                        Defendants.     :
-----------------------------------------------------------------x

GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE

Plaintiff Starr Indemnity & Liability Company ("Starr") brings this action seeking a

declaratory judgment that defendants Brightstar Corp. and Brightstar Germany GmbH

(collectively the "defendants" or "Brightstar"), which distribute wireless communication

devices, are not entitled to coverage under an insurance policy for the claimed loss of wireless

communication devices at a warehouse in Germany. Defendants have counterclaimed that Starr

has breached the insurance policy by refusing to cover this loss, and seek a declaratory judgment

stating that Starr must cover the loss. Defendants now move to transfer this action to the United

States District Court for the Southern District of Florida pursuant to 28 U.S.C. § 1404.[1] For the

---

[1] See Brightstar Corp. & Brightstar Germany GmbH's Notice of Motion to Transfer,
filed Apr. 4, 2018 (Docket # 111) ("Defs. Not."); Brightstar Corp. & Brightstar Germany
GmbH's Memorandum of Law in Support of Their Motion to Transfer, filed Apr. 4, 2018
(Docket # 112) ("Defs. Mem."); Affidavit of Oscar Fumagali, filed Apr. 4, 2018 (Docket # 113)
("Fumagali Aff."); Declaration of Mark L. Durbin, Esq. in Further Support of Brightstar Corp. &
Brightstar Germany GmbH's Notice of Motion to Transfer, filed Apr. 4, 2018 (Docket # 114)
("Durbin Decl."); Declaration of Kevin J.B. O'Malley in Opposition to Motion to Transfer, filed
Apr. 23, 2018 (Docket # 115) ("O'Malley Decl."); Declaration of Charles Capozzoli in
Opposition to Motion to Transfer, filed Apr. 23, 2018 (Docket # 116) ("Capozzoli Decl.");
Declaration of Peter J. Scrobe in Opposition to Motion to Transfer, filed Apr. 23, 2018 (Docket
# 117); Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Transfer, filed
Apr. 23, 2018 (Docket # 118) ("Pl. Mem."); Brightstar Corp. & Brightstar Germany GmbH's
Reply Memorandum in Support of Their Motion to Transfer, filed May 11, 2018 (Docket # 125)
("Defs. Reply").

reasons set forth below, this motion is denied.

I. <u>BACKGROUND</u>

    A. <u>Facts</u>

    Brightstar Corp. is incorporated in the state of Delaware and maintains its headquarters in Miami, Florida. <u>See</u> Fumagali Aff. ¶ 4. Brightstar Germany GmbH is a German subsidiary of Brightstar Corp., and operates solely in Germany. <u>See</u> Amended Answer, Affirmative Defenses and Counterclaim, filed May 28, 2014 (Docket # 26), at Counterclaim ¶¶ 86-87; Affidavit of Oscar Fumagali in Support of Defendant's Opposition to Plaintiffs' Joint Motion to Compel, dated Nov. 16, 2015 (annexed as Ex. 4 to Durbin Decl.) ("Fumagali Nov. 16 Aff."), ¶¶ 3. Starr is incorporated in Texas and maintains its principal place of business in New York. <u>See</u> Declaration of Jeffrey Factor in Support of Plaintiffs' Joint Motion to Compel Defendants, executed Nov. 30, 2015 (annexed as Ex. 14 to O'Malley Decl.) ("Factor Decl."), ¶ 2. Since 1982, Starr has been licensed to sell insurance in Florida. <u>See</u> Starr Indemnity & Liability Company Report Issued by Florida Office of Insurance Regulation, current as of Mar. 5, 2018 (annexed as Ex. 13 to Durbin Decl.), at 1.

    Since 2002, Brightstar has been a client of Starr. <u>See</u> Excerpts of Videotaped Deposition of Peter Scrobe, dated Nov. 4, 2016 (annexed as part of Ex. 5 at *19-22[2] of Durbin Decl.) ("Scrobe Dep."), at 47. In 2011, Starr issued a marine cargo insurance policy to Brightstar Corporation and its subsidiaries, which we will refer to as "the Policy." <u>See</u> Brightstar Corporation Marine Cargo Insurance Policy, effective as of Mar. 26, 2011 (annexed as Ex. 2 to O'Malley Decl.) ("Policy"), at 1, 6. Marsh USA acted as Brightstar's insurance broker in

---

    [2] Page numbers cited as "*__" refer to the pagination created by the Court's ECF system.

connection with this Policy, see Factor Decl. ¶ 8; Excerpts of Videotaped Deposition of Jason

Willson, dated Apr. 11, 2016 (annexed as Ex. 15 to O'Malley Decl.), at 62-63, and "it was

Marsh's New York office that handled the solicitation and negotiation of the Policy on behalf of

Brightstar by corresponding with the Starr Companies' office in New York," Factor Decl ¶ 8.

The Policy provided that it was "continuous and cover[ed] all shipments of goods and/or

merchandise and/or property made on/or and after 12:00 A.M. March 26, 2011 and on all goods

and/or merchandise and/or property at locations on and after said time and date." Policy at 6.

The Policy also stated that "[a]ll Premiums and taxes will be invoiced to and paid by Brightstar

Corporate in Miami, Florida," and that the "Insurer has executed, issued and delivered this

policy at New York, NY." Policy at 8, 33. The Policy contained no choice of law or forum

selection clause.

After Starr issued the Policy, its terms and conditions were adjusted on an annual basis.

See Complaint, filed Dec. 3, 2013 (Docket # 1) ("Compl."), ¶ 23. One of these adjustments

occurred in March 2013, at which time the Miami office of Arthur J. Gallagher & Co. ("AJG")

acted as defendants' insurance broker. See Fumagali Aff. ¶¶ 6-7; Factor Decl ¶¶ 11-12.

Although Brightstar alleges that Starr representatives visited Brightstar's Miami office for a

meeting in March 2013 in connection with that adjustment, see Fumagali Aff. ¶ 7, Starr claims

that no such meeting occurred, see Pl. Mem. at 3. The deposition testimony in the record

indicates that certain Starr representatives met with AJG representatives at some point in Florida.

See Videotaped Deposition of Jeffrey Factor, dated Nov. 3, 2016 (annexed as part of Ex. 5 at

*12-16 to Durbin Decl.) ("Factor Dep."), at 213; Scrobe Dep. at 54; Videotaped Deposition of

Lisabet Rodriguez, dated Sept. 9, 2016 (annexed as Ex. 6 to Durbin Decl.) ("Rodriguez Dep."),

at 156.

In any event, as a result of the March 2013 adjustment, "Endorsement 40" was added to the Policy, effective March 26, 2013. See Policy at *135-38 ("Endorsement 40"). Endorsement 40 covered "goods and merchandise which are owned by or held by the Assured . . . while temporarily detained in stores or warehouses, at any location worldwide." See Endorsement 40 at *135. Pursuant to Endorsement 40, Starr agreed to pay up to $3,000,000 per claimed occurrence at "any unnamed/unscheduled location." Id. at *136.[3] By contrast, Starr agreed to pay up to $25,000,000 per claimed occurrence for losses at "all locations as per schedule on file with underwriters." Id. The schedule of locations, with the value of goods stored at those locations, was to be updated by "Quarterly Statement of Values Report[s]." Id. at *136. This endorsement was signed by Jeffrey Factor, a Starr representative, on September 9, 2013, though it was effective as of March 26, 2013. See id. at *135, *138.

In addition to the Policy as amended by Endorsement 40, Brightstar maintained two excess insurance policies, the first of which was issued by Certain Underwriters at Lloyd's of London, and the second of which was issued by Great American Insurance Company of New York, XL Specialty Insurance Company, Catlin Syndicate Limited, Montpelier at Lloyd's Limited, and Axis Specialty Europe SE (collectively the "Excess Insurers"). See Complaint, Great Am. Ins. Co. of N.Y. v. Brightstar Corp., No. 14 Civ. 5062 (S.D.N.Y. July 7, 2014) (Docket # 2) ("Great Am. Ins. Co. of N.Y. Compl."), ¶ 39(c); Complaint, Certain Underwriters at Lloyd's London Subscribing to Policy Number B1262SM0131613 v. Brightstar Corp., No. 14 Civ. 5297 (S.D.N.Y. July 15, 2014) (Docket # 2) ("Certain Underwriters' Compl."), ¶¶ 7, 38, 40-

---

[3] Although the Policy previously contained warehouse coverage pursuant to Endorsement 17, effective as of March of 2012, see Policy at *72-78, the parties agree that warehouse coverage at the time of the loss at issue in this case was governed by Endorsement 40.

41. These policies covered losses that exceeded the $25,000,000 covered by the Policy for named/scheduled locations. <u>See</u> Great Am. Ins. Co. of N.Y. Compl. ¶ 39; Certain Underwriters' Compl. ¶¶ 40-41.

Starting on approximately March 1, 2013, Brightstar began storing wireless devices at a warehouse in Frankfurt, Germany that was operated by getgoods.de Vertriebs GmbH ("Getgoods"). <u>See</u> Compl. ¶¶ 29, 31; Am. Answer ¶¶ 29, 31. Some time on or after November 7, 2013, Brightstar Corp.'s then-Corporate Vice President of Finance and Brightstar Germany GmbH's director, Oscar Fumagali, was informed that on that date, 193,000 of Brightstar's wireless devices had been lost from this warehouse. <u>See</u> Fumagali Aff. ¶ 2; Excerpts of Videotaped Deposition of Oscar Fumagali, dated Oct. 20-21, 2016 (annexed as Ex. 8 to Durbin Decl.) ("Fumagali Dep."), at 130-31. Based on this loss, the CEO of Getgoods was indicted for misappropriation. <u>See</u> Fumagali Dep. at 131, 562. On November 8, 2013, Brightstar, through AJG, notified Starr and the Excess Insurers of this loss and filed claims with these insurers. <u>See</u> Fumagali Nov. 16 Aff. ¶ 15; <u>see also</u> Email from Lisa Rodriguez to Peter Scrobe et al., dated Nov. 8, 2013 (annexed as Ex. 4 to O'Malley Decl.), at 1.

Jeffrey Factor was the Starr underwriter "responsible for the day-to-day handling of the Brighstar cargo account" since February 2012, and was also "responsible for negotiating and binding the terms and conditions of" the annual adjustment to the Policy that became effective as of March 26, 2013, by endorsement. Factor Decl. ¶¶ 5, 11. Factor worked out of Starr's New York office. <u>Id.</u> ¶ 3. On November 19, 2013, Factor emailed other Starr personnel (among others) suggesting that the location at which plaintiffs' loss occurred was not a named or scheduled location under Endorsement 40 to the Policy. <u>See</u> Email from Jeffrey Factor to Matthew Davis et al., dated Nov. 19, 2013 (annexed as Ex. 24 to O'Malley Decl.), at 1. Factor

notes in an affidavit that the warehouse at which the loss occurred was included as a named/scheduled warehouse under the policy for the first time in a revised Statement of Values sent to Starr on November 5, 2013.  Factor Decl. ¶ 17.

Starr and its investigators informed AJG and Brightstar representatives that the claim was being investigated "under a full Reservation of Rights."  See Email from Mary M. Ranno to Lisa Rodriguez et al., dated Nov. 19, 2013 (annexed as Ex. 6 to O'Malley Decl.); see also Email from Frank P. Reilly to Thomas Connelly, dated Nov. 20, 2013 (annexed as Ex. 7 to O'Malley Decl.) (noting that AJG was "a little taken back by the [Reservation of Rights]").  On November 26, 2013, Factor also informed AJG representative Lisa Rodriguez that "a more extensive and detailed reservation of rights letter will be sent by our claims department in the next week if not sooner."  Email from Jeffrey Factor to Lisa Rodriguez, dated Nov. 26, 2013 (annexed as Ex. 9 to O'Malley Decl.).  On December 2, 2013, Starr's Vice President of Claims, Thomas Connelly, sent a letter by email to Lisa Rodriguez stating that "Starr respectfully reserves its rights concerning the claimed loss" and noting that "there is a possibility that the claimed loss is not covered under the Policy."  Email from Thomas Connelly to Lisa Rodriguez and Attached Reservation of Rights Letter, dated Dec. 2, 2013 (annexed as Ex. 7 to Durbin Decl.), at 1, 7.  This same letter was sent to Brightstar by FedEx.  Deposition of Thomas Connelly, dated Mar. 29, 2017 (annexed as Ex. 18 to O'Malley Decl.) ("Connelly Dep."), at 268-69.  On December 3, 2013 — the next day — Starr filed this action seeking a declaratory judgment that the loss was not covered under the Policy.  See generally Compl.

B.  Procedural History

In July 2014, the Excess Insurers also filed actions in this district against Brightstar

seeking declaratory judgments.  See Great Am. Ins. Co. of N.Y. Compl.; Certain Underwriters'

Compl.  By Order dated August 26, 2014, this Court consolidated the actions brought by the

Excess Insurers with this one for pre-trial purposes.  See Order, dated Aug. 26, 2014 (Docket

# 32).  Fact discovery was completed in this consolidated action in approximately October 2017.

See O'Malley Decl. ¶ 5.  In early 2018, Brightstar settled with the Excess Insurers.  O'Malley

Decl. ¶ 6; Durbin Decl. ¶ 16.  On April 4, 2018, Brightstar filed this motion to transfer.  See

Defs. Not.  On May 25, 2018, the parties filed motions for partial summary judgment.  See

Plaintiff's Notice of Motion for Partial Summary Judgment, filed May 25, 2018 (Docket # 127);

Brightstar Corp. & Brightstar Germany GmbH's Notice of Motion for Partial Summary

Judgment, filed May 25, 2018 (Docket # 131).

II.  GOVERNING LAW

28 U.S.C. § 1404(a) provides in relevant part: "For the convenience of parties and

witnesses, in the interest of justice, a district court may transfer any civil action to any other

district or division where it might have been brought . . . ."  In Atlantic Marine Construction Co.

v. United States District Court for the Western District of Texas, 571 U.S. 49 (2013), the

Supreme Court clarified that

> Section 1404(a) is merely a codification of the doctrine of forum non conveniens
> for the subset of cases in which the transferee forum is within the federal court
> system; in such cases, Congress has replaced the traditional remedy of outright
> dismissal with transfer.

Id. at 60.  Here, defendants seek transfer to the United States District Court for the Southern

District of Florida, which is "within the federal court system."  See id.  Thus, we analyze

defendants' application under 28 U.S.C. § 1404(a).

"In deciding whether to transfer a case from one judicial district to another, a court first examines whether the case could have been brought in the other district." Pence v. GEE Grp., Inc., 236 F. Supp. 3d 843, 849 (S.D.N.Y. 2017) (citing cases). If the case could have been brought in the proposed transferee district, a court must then examine several factors, commonly referred to as "private" and "public-interest" factors. Id. at 850. The Second Circuit has held that "courts should give deference to a plaintiff's choice of forum." Iragorri v. United Techs. Corp., 274 F.3d 65, 70 (2d Cir. 2001). However, transfer may be appropriate where the moving party shows by "clear and convincing" evidence that the balance of convenience favors transfer. N.Y. Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 114 (2d Cir. 2010). The Second Circuit has listed the following factors as appropriate for consideration in determining whether to grant a motion to transfer venue:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

Id. at 112 (internal quotation marks omitted) (quoting D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 106-07 (2d Cir. 2006)). Courts in this district have also considered "(8) the forum's familiarity with the governing law, and (9) trial efficiency and the interest of justice." Fellus v. Sterne, Agee & Leach, Inc., 783 F. Supp. 2d 612, 618 (S.D.N.Y. 2011); accord Tlapanco v. Elges, 207 F. Supp. 3d 324, 328 (S.D.N.Y. 2016), reconsideration denied, 2017 WL 4329789 (S.D.N.Y. Sept. 14, 2017); AIG Fin. Prods. Corp. v. Pub. Util. Dist. No. 1, 675 F. Supp. 2d 354, 368 (S.D.N.Y. 2009). "There is no rigid formula for balancing these factors and no single one of them is determinative. Instead, weighing the balance 'is essentially an equitable task' left to the

Court's discretion." Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000) (citation omitted) (quoting First Nat'l Bank & Tr. Co. v. Simmons, 878 F.2d 76, 80 (2d Cir. 1989)).

## III. DISCUSSION

### A. Whether this Action Could Have Been Brought in the Southern District of Florida

As a threshold matter, Starr disputes whether this action could have been brought in the Southern District of Florida. "For the purposes of section 1404(a), an action might have been brought in another forum if, at the time the action was originally filed, the transferee court would have had subject matter jurisdiction and personal jurisdiction over the defendants, and if venue would have been proper in the transferee court." Posven, C.A. v. Liberty Mut. Ins. Co., 303 F. Supp. 2d 391, 401 (S.D.N.Y. 2004). Starr agrees that the United States District Court for the Southern District of Florida would have had subject matter jurisdiction over this dispute and that it could have exercised personal jurisdiction over Brightstar Corporation. Pl. Mem. at 14 n.7. Starr argues, however, that Brightstar Germany GmbH was not subject to the Southern District of Florida's personal jurisdiction. See id. at 13-14.[4]

In determining whether a federal court may exercise personal jurisdiction over a defendant in diversity or federal question cases, "the court must look first to the long-arm statute of the forum state." Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir. 1997). "If the exercise of jurisdiction is appropriate under that statute, the court then must decide whether such exercise comports with the requisites of due process." Id. Because this Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 (diversity jurisdiction), we look to

---

[4] Starr takes no position on whether venue would have been appropriate in that court. See Pl. Mem. at 15.

Florida's long-arm statute to determine whether the Southern District of Florida could exercise

personal jurisdiction over Brightstar Germany GmbH.

Florida Statute § 48.193 is Florida's long-arm jurisdiction statute. This statute provides,

in part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
>
>> 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
>> . . .
>> 4. Contracting to insure a person, property, or risk located within this state at the time of contracting.
>> . . .
>> 7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state.
>> . . .
>> 9. Entering into a contract that complies with [a statutory provision requiring, among other things, a Florida choice of law provision and agreement to abide by Florida's jurisdiction].

"Florida's long arm statute is of the type that requires more activities or contacts to sustain

service of process than are currently required by decisions of the Supreme Court of the United

States." Bank of Wessington v. Winters Gov't Sec. Corp., 361 So. 2d 757, 759 (Fla. 4th Dist.

Ct. App. 1978).

Defendants have not met their burden of showing that Brightstar Germany GmbH would

have been subject to the personal jurisdiction of the United States District Court for the Southern

District of Florida. Inexplicably, defendants failed to address this issue in their opening brief. In

addressing this issue for the first time in their reply brief — to which Starr had no opportunity to

respond — defendants cite to the Florida long-arm statute only in passing, and support their

argument with no other legal authority. Even in citing the long-arm statute, defendants do not refer to its language or explain which of its subsections apply here. It is thus not clear under which of the subsections defendants even assert that personal jurisdiction would have existed.

Defendants argue that personal jurisdiction could be had over Brightstar Germany GmbH because Brightstar Germany GmbH now consents to personal jurisdiction in the Southern District of Florida, and because Brightstar Germany GmbH is a subsidiary to a parent corporation that is headquartered in Florida. See Defs. Reply at 9. But neither of these arguments would permit a finding that the action could have originally been brought there. See Hoffman v. Blaski, 363 U.S. 335, 342-43 (1960) ("We do not think the s 1404(a) phrase 'where it might have been brought' can be interpreted to mean, as petitioners' theory would required [sic], 'where it may now be rebrought, with defendants' consent.'"); Hobbs v. Don Mealey Chevrolet, Inc., 642 So. 2d 1149, 1155 (Fla. 5th Dist. Ct. App. 1994) (citing cases and noting that "[p]ersonal jurisdiction over a resident parent corporation or a resident corporate officer does not necessarily translate into personal jurisdiction over a non-resident subsidiary or wholly-owned corporation.").

Defendants assert that personal jurisdiction over Brightstar Germany GmbH exists in Florida also because its managing director resides in Florida and it is an additional insured on the policy, see Defs. Reply at 9, but Brightstar provides no argument and points to no statutory provision or case law that allows the exercise personal jurisdiction under the Florida long-arm statute over Brightstar Germany GmbH based on these circumstances.

Finally, Brightstar suggests that the fact that Starr brought this action in New York means that it could have been brought in Florida on the ground that the connections to New York are "limited." See Def. Reply at 9-10. Putting aside the fact that defendants do not argue that New

York's long-arm statute is identical to Florida's, it may be that there was actually no basis for personal jurisdiction in New York and that Brightstar Germany GmbH simply decided to waive this defect. This would not alter the fact that the action could not have been brought in Florida.

Accordingly, we conclude that Brightstar has not met its burden of showing that this action could have originally been brought in the Southern District of Florida. Thus, the motion to transfer must be denied on this basis alone.

In any event, we conclude, as explained in the next section, that transfer would be inappropriate based on an application of the "public" and "private" factors applicable to motions to transfer under 28 U.S.C. § 1404(a).

    B.  <u>Whether the "Public" and "Private" Factors Favor Transfer to the Southern District of Florida</u>

        1.  <u>Plaintiff's Choice of Forum</u>

"A plaintiff's choice of forum is generally entitled to considerable weight and should not be disturbed unless the balance of the factors is strongly in favor of the defendant. Where the factors are equally balanced, the plaintiff is entitled to its choice." <u>Berman v. Informix Corp.</u>, 30 F. Supp. 2d 653, 659 (S.D.N.Y. 1998) (citations omitted); <u>accord</u> <u>In re Warrick</u>, 70 F.3d 736, 740-41 (2d Cir. 1995) (per curiam) ("[Plaintiff's] choice of venue [is] 'entitled to substantial consideration.'") (quoting <u>A. Olinick & Sons v. Dempster Bros., Inc.</u>, 365 F.2d 439, 444 (2d Cir. 1966)). "This is especially true where plaintiff's chosen forum is its principal place of business." <u>TouchTunes Music Corp. v. Rowe Int'l Corp.</u>, 676 F. Supp. 2d 169, 173 (S.D.N.Y. 2009). "However, plaintiffs' choice of forum is accorded less weight where the plaintiffs' chosen forum is neither their home nor the place where the operative facts of the action occurred." <u>Dwyer v. Gen. Motors Corp.</u>, 853 F. Supp. 690, 694 (S.D.N.Y. 1994); <u>accord</u> <u>Emp'rs Ins. of Wausau v.</u>

News Corp., 2008 WL 4443899, at *3 (S.D.N.Y. Sept. 29, 2008) ("[W]here the plaintiff has chosen a forum that is neither the district of its residence, nor the locus of the operative facts in the case, this choice is given considerably less weight.").

Here, Starr's principal place of business is New York. The Policy itself, which was originally negotiated between Starr and a New York-based broker in 2011, Factor Decl ¶ 8, stated that it was "executed, issued and delivered" in New York, New York and that it was "continuous and cover[ed] all shipments of goods and/or merchandise and/or property made on/or and after 12:00 A.M. March 26, 2011 and on all goods and/or merchandise and/or property at locations on and after said time and date." Policy at 6, 33. Although the March 2013 endorsement setting forth the warehouse coverage at issue here was negotiated between Miami-based AJG and Starr, that endorsement was to a continuous policy. Moreover, Endorsement 40 was signed on behalf of Starr by Factor, who was working in New York at the time. Thus, New York is both Starr's home and a location in which many of the operative facts occurred. Starr's choice of forum is thus entitled to considerable weight. Cf. Dwyer, 853 F. Supp. at 694.[5]

---

[5] We thus reject as meritless defendants' contention that Starr's choice of forum should be given no weight because "New York has nearly nothing to do with this case" and "[t]his case was filed in New York in a patent act of forum shopping." Defs. Mem. at 15. Likewise, we find inapposite the cases defendants cite in support of their argument holding that "[w]here . . . there is . . . such a tenuous connection between plaintiff's claims and the Southern District of New York, the plaintiff's selection of this forum has an artificial quality that entitles a court to give it less weight." Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp., 11 F. Supp. 2d 729, 730 (S.D.N.Y. 1998). The other cases cited by defendants are similarly distinguishable. See Liberty Mut. Fire Ins. v. Costco Wholesale Corp., 2007 WL 2435159, at *2 (S.D.N.Y. Aug. 28, 2007) (noting that "the consideration afforded to a plaintiff's choice of forum is usually diminished" where the plaintiff has chosen a forum that is not, inter alia, "the district of its residence"); Fuji Photo Film Co. v. Lexar Media, Inc., 415 F. Supp. 2d 370, 376 (S.D.N.Y. 2006) (finding plaintiff's choice of forum was entitled to "little deference" where one of the two plaintiffs did not reside in the district) (internal quotation marks omitted); U.S. Fid. & Guar. Co. v. Republic Drug Co., 800 F. Supp. 1076, 1082 (E.D.N.Y. 1992) (giving "reduced significance" to plaintiff's choice of forum where "transactions or facts giving rise to the action have no

13

Defendants counter that Starr engaged in "forum shopping," which constitutes a "special circumstance" warranting the transfer of this case. Defs. Mem. at 15-16. In particular, defendants assert that Starr shopped forums by filing this declaratory judgment action only one day after issuing its formal Reservation of Rights letter, and before issuing any denial of defendants' claims, in an attempt to secure a forum in which the law would be more favorable than it would be in the Southern District of Florida. See id.; Defs. Reply at 5.

In Continental Insurance Companies v. Wickes Companies, Inc., 1991 WL 183771 (S.D.N.Y. Sept. 6, 1991), cited by defendants, the court observed that "where there are two competing lawsuits involving substantially the same issue, 'the first suit should have priority, absent the showing of balance of convenience in favor of the second action, or unless there are special circumstances which justify giving priority to the second.'" Id. at *1 (quoting Motion Picture Lab. Technicians, Local 780 v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d Cir. 1986)). In turn, the court noted that "[t]he chief 'special circumstance' courts in this circuit have noted is the interest of the judicial system in discouraging forum shopping." Id. at *5. However, unlike in Wickes, there is no competing lawsuit here. Defendants cite to no case in which the "special circumstance" of "forum shopping" has affected the weight given to plaintiff's choice of forum in the absence of a competing lawsuit filed elsewhere.

In any event, Starr has not engaged in "forum shopping." "Forum shopping occurs when a litigant selects a forum with only a slight connection to the factual circumstances of his action, or where forum shopping alone motivated the choice." Everest Capital Ltd. v. Everest Funds Mgmt., L.L.C., 178 F. Supp. 2d 459, 470 (S.D.N.Y. 2002) (internal quotation marks omitted)

---

material relation or significant connection to the plaintiff's chosen forum").

(quoting <u>Riviera Trading Corp. v. Oakley, Inc.</u>, 944 F. Supp. 1150, 1158 (S.D.N.Y. 1996).

Circuit case law following <u>Continental Insurance Companies</u> has recognized that forum

shopping may constitute a special circumstance only where it "<u>alone</u> motivated the choice of the

situs for the first suit." <u>Emp'rs Ins. of Wausau</u>, 522 F.3d at 276 (emphasis in original) (internal

quotation marks omitted) (quoting <u>William Gluckin & Co. v. Int'l Playtex Corp.</u>, 407 F.2d 177,

178 (2d Cir. 1969)). The Second Circuit has noted that "[a]ny lawyer who files a case on behalf

of a client must consider which of the available fora might yield some advantage to his client."

<u>Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.</u>, 522 F.3d 271, 276 (2d Cir. 2008). Thus, for a

claim of forum shopping to constitute a special circumstance, "the first-filing plaintiff must

engage in some manipulative or deceptive behavior, or the ties between the litigation and the

first forum must be . . . tenuous or de minimis." <u>Id</u>. Here, this lawsuit is connected to the

Southern District of New York for the reasons already discussed and there is no evidence of

manipulative or deceptive behavior. Thus, we will not characterize Starr's choice of forum as

improper "forum shopping."[6]

Defendants also contend that this action constitutes an "improper anticipatory filing,"

which is another basis on which courts have disregarded the "first-filed" rule, on the ground that

Starr filed this action only one day after sending its formal reservation of rights letter and before

it formally denied coverage under the Policy. <u>See</u> Defs. Reply at 5 & n.2. Once again,

defendants have pointed to no case in which a case was considered to be an "improper

_____

[6] Defendants also assert that the reason Starr brought this action in the Southern District of New York was to "circumvent Florida insurance coverage law, Florida public policy, and to avoid the application of [a Florida statutory provision permitting the shifting of attorneys' fees to an insurer against whom a judgment is entered]." Defs. Reply at 5. This argument is supported by nothing more than defendants' speculation, however.

anticipatory filing" in the absence of a parallel lawsuit elsewhere. In any event, "[d]istrict courts in this Circuit have recognized that, in order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action." Emp'rs Ins. of Wausau, 522 F.3d at 276; accord Herbert Ltd. P'ship v. Elec. Arts Inc., 325 F. Supp. 2d 282, 292 (S.D.N.Y. 2004) ("An improper anticipatory filing is one 'made under the apparent threat of a presumed adversary filing the mirror image of that suit in a different [court].'") (alteration in original) (quoting Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995)). Here, there was no such threat from Brightstar. Notably, after the insured has made a claim for coverage, "under New York law, [an] [i]nsurer[] [is] within their rights to disclaim coverage by filing for declaratory judgment — they [a]re under no obligation to disclaim coverage before doing so." Emp'rs Ins. of Wausau, 522 F.3d at 276; see also Schnabel v. Ramsey Quantitative Sys., Inc., 322 F. Supp. 2d 505, 513-14 (S.D.N.Y. 2004) ("A party who appropriately files a declaratory judgment action in the forum most convenient to him to resolve a ripe legal dispute is not engaged in forum shopping.").

Accordingly, we find that Starr's choice of forum is entitled to considerable weight.

### 2. Locus of Operative Facts

"The locus of operative facts is a primary factor in determining whether to transfer venue." Tianhai Lace USA Inc. v. Forever 21, Inc., 2017 WL 4712632, at *4 (S.D.N.Y. Sept. 27, 2017) (internal quotation marks omitted) (quoting Steck v. Santander Consumer USA Holdings, Inc. 2015 WL 3767445, at *6 (S.D.N.Y. June 17, 2015)). "[I]n determining the locus of operative facts for an insurance coverage issue, the locus in question is the site of 'the execution of the contract, not the location of the incident which triggered the insurance claim.'"

Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc., 474 F. Supp. 2d 474, 485 (S.D.N.Y. 2007) (quoting Royal Ins. Co. of Am. v. Tower Records, 2002 WL 31385815, at *4 (S.D.N.Y. Oct. 22, 2002)), aff'd, 599 F.3d 102 (2d Cir. 2010); accord Indian Harbor Ins. Co. v. Factory Mut. Ins. Co., 419 F. Supp. 2d 395, 405 (S.D.N.Y. 2005). Courts have also "emphasize[d] the site of negotiations, purchase, and delivery of the policy in question" when assessing the locus of operative facts in an insurance coverage dispute. Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014). By contrast, courts generally do not look to the site where the loss occurred because at issue in insurance contract disputes is "the determination of the respective rights and obligations of the parties pursuant to an insurance contract." Royal Ins. Co. of Am., 2002 WL 31385815, at *4. Finally, "[a]lthough choice of law analysis must conclude that one particular jurisdiction's law applies, venue analysis may determine that there are several loci of operative facts." Adams v. Key Tronic Corp., 1997 WL 1864, at *4 n.1 (S.D.N.Y. Jan. 2, 1997).

Here, Starr "executed, issued and delivered" the Policy initially in New York, New York. Policy at 33. The Policy was originally negotiated between Marsh USA's New York office and Starr's New York office. Factor Decl ¶ 8 ("[I]t was Marsh's New York office that handled the solicitation and negotiation of the Policy on behalf of Brightstar by corresponding with the Starr Companies' office in New York."). By the time of the March 2013 annual adjustment — during which the warehouse coverage at issue was added in Endorsement 40 — Miami-based AJG, not New York-based Marsh, was defendants' broker. However, the Policy as originally issued in 2011 provided that it was "continuous and cover[ed] all shipments of goods and/or merchandise and/or property made on/or and after 12:00 A.M. March 26, 2011 and on all goods and/or merchandise and/or property at locations on and after said time and date." Policy at 6.

17

Moreover, Endorsement 40 itself notes that it is "ATTACHED TO AND FORMING PART OF" the Policy and the endorsement contains no language changing the location at which the Policy was executed, issued or delivered.  See Endorsement 40 at *135-38.  As already noted, it is endorsed only by Factor, who was a Starr representative at the time.  See id. at *138.

Defendants argue that Florida is the locus of operative facts because AJG negotiated Endorsement 40 from its Miami office.  However, there is no evidence that Endorsement 40 constituted a separate insurance policy from the Policy, such that its execution and negotiation should be considered in determining the locus of operative facts, in lieu of the Policy's location of execution and negotiation — nor do defendants even so contend.  In any event, Endorsement 40 was executed by only Factor, who worked from Starr's New York office, see Endorsement 40 at *138; Factor Decl ¶ 3, thus suggesting that even this Endorsement was executed and issued in New York.  Moreover, although Factor and Scrobe met with AJG representatives in Miami at some point, it is not clear whether they did so for the purpose of negotiating Endorsement 40 and the March 2013 adjustment with AJG.  Factor Dep. at 213; Scrobe Dep. at 54; Rodriguez Dep. at 156.

Defendants assert that "the facts surrounding the loss remain relevant and they too favor transfer."  Defs. Mem. at 14.  In turn, defendants assert that this consideration favors transfer because "[t]he only U.S. based witnesses with knowledge of the loss reside in Florida."  Id.  However, courts generally find that the site of the loss is irrelevant in determining the locus of operative facts in an insurance coverage dispute.  See Royal Ins. Co. of Am., 2002 WL 31385815, at *4.  This conclusion is warranted here, as the central issues in this case revolve around the terms of the Policy and whether the warehouse at issue was named or unnamed.  Insofar as defendants argue that the witnesses with relevant facts are located in Florida, we

18

consider this in the next section where we discuss the convenience of the witnesses prong.

Based on these considerations, we find that the Southern District of New York is the locus of operative facts in this case. This factor thus weighs against transfer.

### 3. Convenience of the Witnesses

"The convenience of parties and witnesses is considered the 'essential criteri[on] under the venue statute.'" In re Nematron Corp. Sec. Litig., 30 F. Supp. 2d 397, 400 (S.D.N.Y. 1998) (quoting Cento Grp., S.p.A. v. OroAmerica, Inc., 822 F. Supp. 1058, 1060 (S.D.N.Y. 1993)); accord Pence, 236 F. Supp. 3d at 856. The convenience of witnesses, in particular, is often cited as the most important factor. See, e.g., Tlapanco, 207 F. Supp. 3d at 329; SEC v. Comm. on Ways & Means of U.S. House of Representatives, 161 F. Supp. 3d 199, 227 (S.D.N.Y. 2015); Larew v. Larew, 2012 WL 87616, at *4 (S.D.N.Y. Jan. 10, 2012); AGCS Marine Ins. Co. v. Associated Gas & Oil Co., Ltd., 775 F. Supp. 2d 640, 647 (S.D.N.Y. 2011); Seltzer v. Omni Hotels, 2010 WL 3910597, at *2 (S.D.N.Y. Sept. 30, 2010). "In evaluating this factor, the court should 'look beyond the quantity of witnesses and assess the quality of the testimony to be offered.'" DealTime.com Ltd. v. McNulty, 123 F. Supp. 2d 750, 755 (S.D.N.Y. 2000) (quoting Am. All. Ins. Co. v. Sunbeam Corp., 1999 WL 38183, at *6 (S.D.N.Y. Jan. 28, 1999)). Accordingly, the movant "must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978); accord Pence, 236 F. Supp. 3d at 856; Liberty Mut. Ins. Co. v. Fairbanks Co., 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014).[7] Finally, "[t]he convenience of non-

---

[7] Nevertheless, "a specific showing is required only when the movant seeks a transfer solely 'on account of the convenience of witnesses.' . . . [If the movant] seeks a transfer 'on account of' several factors, his failure to specify key witnesses and their testimony is not fatal." Connors v. Lexington Ins. Co., 666 F. Supp. 434, 455 (E.D.N.Y. 1987) (emphasis in original)

party witnesses generally carries more weight than the convenience of party witnesses." <u>Herbert Ltd. P'ship</u>, 325 F. Supp. 2d at 286.

Each party has identified several alleged witnesses residing in areas more readily accessible to their preferred venue. <u>See</u> Defs. Mem. at 8-10; Pl. Mem. at 17-20.

Defendants identify Oscar Fumagali (Brightstar Corp.'s former Corporate Vice President of Finance and Brightstar GmbH's director), Lisa Rodriguez (an AJG employee involved in handling the Policy and the alleged loss), Kevin O'Brien (a former Brightstar employee), Robin Thompson (an AJG employee), Peter Scrobe (a Starr employee), Jeffrey Factor (the Starr underwriter who handled Brightstar's account and alleged loss), and Arturo Osorio (another former Brightstar employee) as key or material witnesses, and claim that all of these individuals except for Factor reside in or around Miami.[8] <u>See</u> Defs. Mem. at 8-10; Defs. Reply at 7. Defendants assert that these witnesses would offer testimony concerning the 2013 adjustment of the Policy and Endorsement 40, Brightstar's loss, and the damages arising therefrom. <u>See</u> Defs. Mem. at 8-10; Defs. Reply at 7. Of these, all but Fumagali and Scrobe are non-party witnesses. <u>See</u> Defs. Reply at 7.

In addition to Factor, who Starr says is a New Jersey resident, and Scrobe, Starr identifies Thomas Connelly (a New Jersey resident and the former vice president of claims in Starr's New York office who handled defendants' claim), and Charles Capozzoli (an employee in Starr's New York office who authorized the filing of this suit and purportedly has knowledge of Starr's

(quoting <u>Factors, Etc.</u>, 579 F.2d at 218); <u>accord</u> <u>Larew</u>, 2012 WL 87616, at *4.

---

[8] Defendants list several other witnesses but do not explain why their testimony would be relevant or necessary. <u>See</u> Defs. Mem. at 9-10; Defs. Reply at 7. Given that our analysis focuses on the quality of the witnesses instead of the quantity, <u>DealTime.com Ltd.</u>, 123 F. Supp. 2d at 755, we do not consider these other witnesses.

reason for denying coverage to defendants) as key or material witnesses.[9]  See Pl. Mem. at 18-

20.  According to Starr, these witnesses would testify about the Policy's terms and conditions,

including issues relating to warehouse coverage, as well as the "reporting of locations for

purposes of warehouse coverage."  Id.  Because Factor and Connelly no longer work for Starr,

they are non-party witnesses.  Capozzoli and Scrobe remain party witnesses.

Of the witnesses listed by Starr, Factor's testimony seems most critical to this case.

Factor was "one of the underwriters responsible for the day-to-day handing of the Brightstar

cargo account," was "responsible for negotiating and binding the terms and conditions of" the

March 26, 2013 adjustment in which warehouse coverage was added to the Policy, assisted in

making Starr's determination that the warehouse at which the loss occurred was

unnamed/unscheduled under the Policy, and corresponded with AJG after defendants claimed

the loss in an effort to resolve that issue.  See Factor Decl. ¶¶ 5, 11-19.  He thus has substantial

personal knowledge pertaining to this dispute.

Defendants assert that Charles Capozzoli is not a material witness on the ground that

"[h]e has no personal knowledge of any material fact to offer at trial."  Defs. Reply at 8.

However, Capozzoli submitted a declaration in conjunction with this motion, in which he stated

that he was the "Executive Vice President of Starr Marine Agency, Inc.," Capozzoli Decl ¶ 1,

that he "came to believe by December 3, 2013 that Starr Indemnity had sufficient information to

---

[9]  Starr identifies Marsh, the broker that negotiated the Policy on defendants' behalf in
2011, as a key witness.  See Pl. Mem. at 19.  Starr claims that "Marsh has knowledge of the
negotiation of the Policy, the drafting of the Policy, the Policy's terms and conditions and the
reporting of locations for purposes of warehouse coverage."  Id.  However, it was AJG, and not
Marsh, that was responsible for brokering the 2013 adjustment and Endorsement 40, which
added the warehouse coverage at issue in this case, to the Policy.  Accordingly, it is not clear
what relevant testimony any Marsh representative could provide regarding the issues presented
in this case.  We thus do not consider Marsh's convenience.

move forward with a declaratory judgment action" based on the belief that the warehouse at which the loss occurred was an "unnamed/unscheduled location," id. ¶ 13, and that he accordingly authorized the filing of the declaratory judgment action in the Southern District of New York on December 3, 2013, see id. ¶ 14.  Because the filing of the instant action was effectively Starr's formal denial of coverage, Capozzoli was thus the individual who made the decision to deny coverage.  Moreover, the issue of whether the location at which the loss occurred was named/scheduled or unnamed/unscheduled appears to be the central issue in this case.  As a result, we conclude that Capozzoli is a material witness.

Defendants also argue that Starr "lists various other people in its claim department who[] had nothing to do with Brightstar's claim."  Defs. Reply at 8.  By this, defendants apparently refer to Thomas Connelly, who was Starr's vice president for claims in its New York office and handled defendants' claim in this case.  See Connelly Dep. at 10; see also Email from Thomas Connelly to Lisa Rodriguez and Attached Reservation of Rights Letter, dated Dec. 2, 2013 (annexed as Ex. 7 to Durbin Decl.), at 1, 10-11.  We do not accept that Connelly's testimony would be any less relevant than that of the witnesses identified by defendants.  Connelly informed Lisa Rodriguez that Starr was reserving its rights and may deny coverage.  See id.  He thus may have information relevant to the interpretation of the Policy, including warehouse coverage, and Starr's investigation into whether the warehouse at which the loss occurred was covered.  Indeed, defendants deposed Connelly in this matter, suggesting that they believe his testimony may be relevant.  See generally Connelly Dep.

Finally, defendants assert that because Factor lives in New Jersey instead of New York, the Court should find that his residence does not supporting retaining venue in the Southern

District of New York.[10]  See Defs. Reply at 1, 7.  However, even though Factor does not live in

this forum, this does not mean that the Court should ignore the fact that it would be easier for

him to travel to New York than to Florida.  Indeed, courts have considered this practical reality

in determining whether transferring a case would be more convenient for witnesses.  See Jones

v. United States, 2002 WL 2003191, at *2 (E.D.N.Y. Aug. 26, 2002) (finding that Georgia

would present a more convenient forum for the witnesses than New York in part because some

witnesses resided "in the adjacent states of Alabama or Florida" and noting that "[t]hese

witnesses would be greatly inconvenienced by having to travel to New York to testify").

In sum, defendants identify more key or material witnesses for whom the Southern

District of Florida might be a more convenient forum.  However, we are mindful that we should

consider not only the quantity of witnesses residing in or around a certain forum, but also their

quality.  On this question, Factor seems to be one of the key witnesses, and the Southern District

of New York would be a more convenient forum for him.  Defendants have done little to explain

whether or not the witnesses they identify have cumulative information.  In the end, we find that

the "convenience of the witnesses" factor weighs only somewhat in favor of transferring to the

Southern District of Florida.

### 4.  Convenience of the Parties

"When analyzing the convenience to the parties, courts often look to the parties'

principal places of business and the location of their offices."  Royal & Sun All. Ins., PLC v.

Nippon Express USA, Inc., 202 F. Supp. 3d 399, 407 (S.D.N.Y. 2016).  Starr has its principal

place of business in New York, whereas Brightstar Corporation has its principal place of

---

[10]  Although defendants do not address it, Starr notes that Connelly also lives in New Jersey.  See Connelly Dep. at 9.  Accordingly, this analysis is also relevant to him.

business in Miami, Florida.  Because Brightstar Germany DmbH is a foreign corporation that

operates exclusively in Germany, both the Southern District of New York and the Southern

District of Florida would be equally inconvenient for it.  See, e.g., Deshoulieres, S.A. v.

Cuthbertson Imps., Inc., 2006 WL 2849818, at *3 (S.D.N.Y. Oct. 3, 2006) (unimportant to

foreign plaintiff if it litigates in New York or Connecticut as both are equally inconvenient); Dr.

Boy, GmbH v. Nationwide Ins., 1996 WL 350699, at *2 (S.D.N.Y. June 25, 1996)

(inconvenience of a foreign corporation with no presence in New York "is 'at best a neutral

factor.'") (quoting Matra et Manurhin v. Int'l Armament Co., 628 F. Supp. 1532, 1535

(S.D.N.Y. 1986)).  Thus, transferring venue would merely "shift the inconvenience from one

party to the other."  Kroll v. Lieberman, 244 F. Supp. 2d 100, 103 (E.D.N.Y. 2003).

Accordingly, the convenience of the parties is a neutral factor here.

### 5. Availability of Compulsory Process

Pursuant to Federal Rule of Civil Procedure 45(c)(1)(A), a district court generally cannot

issue a subpoena that would compel a non-party witness to travel more than 100 miles or out of

state.  There are material non-party witnesses outside of the subpoena power of both the

Southern District of New York and the Southern District of Florida, as already discussed.  As a

result, no matter which forum is picked, some material witnesses will be outside of the reach of

compulsory process.

"However, the unavailability of process over third-party witnesses does not compel

transfer when the practical alternative of offering videotaped or deposition testimony of a given

witness exists."  Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000);

see also GLMKTS, Inc. v. Decorize, Inc., 2004 WL 2434717, at *3 (E.D.N.Y. Nov. 1, 2004)

(finding the convenience of the witnesses to be a neutral factor in part because neither party

asserted "that the use of videotaped depositions will be an inadequate substitute"). All of the material non-party witnesses defendants identified were deposed on video, and all but one of the material witnesses identified by Starr were deposed. See O'Malley Decl. ¶¶ 9-10; Defs. Mem. at 14; Pl. Mem. at 26. Although defendants assert that "[t]here can be no dispute that live testimony is favorable to a videotaped deposition being played at trial," Defs. Mem. at 15, this general statement does little to assist the Court because it is not clear that the demeanor of the witnesses will be of importance; in other words, it has not been explained whether the testimony of any of these witnesses is disputed such that issues of credibility of these witnesses would have to be considered by a factfinder.

Starr notes that although Rodriguez and Thompson are technically non-party witnesses because they work for AJG, defendants have a "Common Interest and Joint Defense Confidentiality Agreement" with AJG pursuant to which defendants and AJG "'agree that [they] have a common interest in the outcome of [this action]' and that they 'understand there is a mutual benefit of cooperating with each other in the defense of [this action].'" Pl. Mem. at 26 (quoting Common Interest and Joint Defense Confidentiality Agreement, dated Sept. 12, 2014 (annexed as Ex. 13 to O'Malley Decl.) ("Common Interest Agreement"), ¶ 3). This agreement requires AJG "to cooperate fully in the defense of the Litigation." See Common Interest Agreement ¶ 3.

Defendants counter that this agreement cannot be relied upon to guarantee Rodriguez and Thompson's appearance at a trial in the Southern District of New York because "that agreement does not apply to the material witnesses individually," and as a result, "if they do not personally agree to attend trial and/or are no longer employed by AJG at the time of trial, they too would be outside the power of this Court." Defs. Reply at 8. However, even if Rodriguez and Thompson

are not personally parties to this agreement, their employer is, thus strongly suggesting that their attendance at a trial in this district is likely. Moreover, the risk that these individuals will no longer be employed by AJG at the time of trial is the same risk that applies to all party witnesses currently employed by defendants or Starr. Thus, we agree with Starr that this agreement mitigates the extent to which this Court need be concerned that Rodriguez and Thompson would not be available to testify for Brightstar at trial.

Based on the above, we find that the availability of compulsory process in this case is neutral.

### 6. Relative Means of the Parties

"Where disparity exists between the parties, such as an individual plaintiff suing a large corporation, the relative means of the parties may be considered." Berman, 30 F. Supp. 2d at 659; accord Zinky Elecs. LLC v. Victoria Amplifier Co., 2009 WL 2151178, at *7-8 (D. Conn. June 24, 2009). Neither party has presented any argument related to this factor. Accordingly, we find it neutral in our analysis.

### 7. Forum's Familiarity With Governing Law

A court's familiarity with the governing law is generally given little weight, as "federal courts commonly apply state substantive law, which may not be the law of the state in which the federal court sits." Freeplay Music, LLC v. Gibson Brands, Inc., 2016 WL 4097804, at *5 (S.D.N.Y. July 18, 2016) (internal quotation marks omitted) (quoting Kwik Goal, Ltd. v. Youth Sports Publ'g, Inc., 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006)). In applying this factor, "[f]ederal courts sitting in diversity look to the choice-of-law rules of the forum state." Int'l Bus. Machs. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004) (citing Curley v. AMR Corp., 153 F. 3d 5, 12 (2d Cir. 1998)). Starr argues that under either New York or Florida

choice of law rules, New York law would apply to this matter. Defendants conclusorily dispute this assertion, but fail to support their denial with any relevant facts or case law, instead proposing to "address the issue of choice of law in connection with the upcoming summary judgment motions and not here because the other factors so clearly favor transfer." <u>See</u> Defs. Reply at 2 n.1. Because defendants refuse to address this factor, and because we find that its minuscule weight would not affect our conclusion in this case, we find this factor to be neutral.

### 8. <u>Location of Documents</u>

"In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly. Furthermore, the location of documents is entitled to little weight unless [the movant] makes a detailed showing of the burden it would incur absent transfer." <u>Larew</u>, 2012 WL 87616, at *5 (alteration in original) (internal quotation marks omitted) (quoting <u>Seltzer</u>, 2010 WL 3910597, at *4); <u>accord</u> <u>Tlapanco</u>, 207 F. Supp. 3d at 330-31 ("The location of relevant documents and the ease of access to sources of proof is mostly a neutral factor, in light of 'the technological age in which we live, where there is widespread use of, among other things, electronic document production.'") (quoting <u>Rindfleisch v. Gentiva Health Sys. Inc.</u>, 752 F. Supp. 2d 246, 258 (E.D.N.Y. 2010)). Neither party addresses how this factor applies to this case. Accordingly, we find this factor to be neutral.

### 9. <u>Trial Efficiency and the Interests of Justice</u>

Though listed as a single factor, we assess trial efficiency and the interests of justice separately.

(a) <u>Trial Efficiency</u>

"When a case is in its earliest stages, it is generally not inefficient to transfer the case."

<u>Royal & Sun All. Ins., PLC</u>, 202 F. Supp. 3d at 411.  However, courts generally find that the

farther along a case is in the litigation process, the less efficient a transfer would be.  <u>See</u> <u>id.</u>

(finding that transfer would be inefficient when "the parties are only two months away from the

close of discovery."); <u>Haber v. ASN 50th St., LLC</u>, 2011 WL 1226282, at *2 (S.D.N.Y. Mar. 30,

2011) ("Given this Court's familiarity with the action," as well as the fact that "[d]iscovery is

nearly complete . . . judicial economy weighs strongly in favor of a final adjudication by this

Court."); <u>Mears v. Montgomery</u>, 2004 WL 964093, at *10 (S.D.N.Y. May 5, 2004) (finding that

consideration of trial efficiency weighed against transfer because "[t]o transfer this case now,

when it is on the brink of proceeding to trial, would further delay the resolution of plaintiff's

claims while wasting the considerable judicial resources thus far expended."); <u>see</u> <u>also</u> <u>Apache</u>

<u>Prods. Co. v. Emp'rs Ins. of Wausau</u>, 154 F.R.D. 650, 657 (S.D. Miss. 1994) ("[A] party's delay

in seeking transfer may appropriately be considered in evaluating the motion since a delay in

requesting transfer may impact other pertinent considerations, such as whether a transfer after

substantial progression of the case in one forum would delay the ultimate resolution of the action

or greatly diminish the value of judicial resources that have been expended in the matter.").

The advanced stage of this litigation, coupled with this Court's familiarity with this

litigation, suggests that transferring this case would be inefficient.  This case was initiated more

than four years ago.  Since that time, discovery has completed, including expert witness

discovery.  <u>See</u> Letter from John A.V. Nicoletti, filed Mar. 22, 2018 (Docket # 109); Memo

Endorsement of Letter from Mark L. Durbin, filed May 8, 2018 (Docket # 124).  The Court has

adjudicated a number of discovery disputes and held multiple conferences.  In other words, this

Court has gained familiarity with this action that would be lost upon transfer to the Southern District of Florida, thereby resulting in greater inefficiency in resolving both dispositive motions and trial issues.

Additionally, the parties' motions for summary judgment, which are now fully briefed, assume that New York is the forum state and thus have applied New York choice of law provisions. <u>See</u> Memorandum of Law in Support of Plaintiff's Motion for Partial Summary Judgment, filed May 25, 2018 (Docket # 130), at 17; Brightstar Corp. & Brightstar Germany GmbH's Memorandum of Law in Support of Motion for Partial Summary Judgment, filed May 25, 2018 (Docket # 133), at 9 & n.7. These motions would need to be partially redrafted if this case were transferred to the Southern District of Florida.

Defendants argue that this case will proceed more efficiently in the Southern District of Florida because that court has fewer cases per judge and generally completes more trials per judge over the course of a year compared with the Southern District of New York. <u>See</u> Defs. Mem. at 16-17. Defendants also contend that the Southern District of Florida "ranks fifth in the nation for shortest time from filing to trial, while the Southern District of New York ranks thirty-eighth." <u>Id.</u> at 17. While these statistics suggest that a case may proceed more quickly to trial if it is initiated in the Southern District of Florida in the first instance, we cannot find that these statistics outweigh the other indicia pertinent to the trial efficiency factor — in particular this case's advanced stage and the Court's familiarity with it. We therefore find that the trial efficiency factor weighs against transfer.

(b)  Interests of Justice

Some cases have considered whether a forum has a "local interest" in a particular

dispute, such that it would be appropriate for that forum to adjudicate the dispute.  See Liberty

Mut. Fire Ins., 2007 WL 2435159, at *6 (considering "local interest" in deciding a motion to

transfer venue pursuant to § 1404(a)).  The parties both argue that their preferred forum has a

"local interest" in this dispute.  See Defs. Mem. at 17; Pl. Mem. at 34-35.  However, we do not

see why either forum has a greater interest than the other.  Although the insured here was a

Florida-based company that employs Florida residents, the insurer in this action was a New

York-based company employing residents of the New York area, and the Policy was issued,

executed, and delivered in New York.

More importantly, this dispute is simply not local in nature.  The Policy covers risks

arising from defendants' operations around the globe and the particular loss at issue occurred in

Germany.  Thus, neither forum has a "local" interest in the outcome of this dispute.  See Liberty

Mut. Fire Ins., 2007 WL 2435159, at *6 (S.D.N.Y. Aug. 28, 2007) (finding that dispute did not

present a "localized controversy" where "the litigation itself concerns an insurance policy

negotiated, executed, and procured in Washington and California, and the Policy at issue covers

260 additional properties in six different countries.").[11]

---

[11]  Defendants cite Cronin v. Washington National Insurance Co., 980 F.2d 663 (11th Cir.
1993), for the proposition that "Florida's interest in resolving a dispute over a contract pursuant
to which insurance benefits would be provided to a patient in a Florida hospital is substantial."
Id. at 671.  This statement was not made in the context of a motion to transfer venue, but rather
was made in determining whether the exercise of personal jurisdiction over an insurer in Florida
would comport with "traditional notions of fair play and substantial justice." Id. (internal
quotation marks omitted) (quoting Madara v. Hall, 916 F.2d 1510, 1517 (11th Cir. 1990)).  As a
result, that court was not asked to, and did not, consider whether another forum might have an
equally valid interest in resolving the dispute, as we do here.  Moreover, Cronin was factually
inapposite because in that case, the insurer allegedly "entered into an oral contract to provide

In their reply brief, defendants also attempt to recast their argument that Starr engaged in "forum shopping" and made an "improper anticipatory filing" as a reason why the interests of justice favor transferring this case to the Southern District of Florida. See Defs. Reply at 3-6. However, we have already rejected defendants' argument that Starr engaged in any improper conduct by filing this case when it did in the Southern District of New York. We thus reject this argument in this context as well.

\*       \*       \*

After considering all the factors, we find that defendants have failed to establish by "clear and convincing evidence," N.Y. Marine & Gen. Ins. Co., 599 F.3d at 114, that we should not defer to plaintiff's choice of forum. The only factor weighing in favor of transfer is the convenience of the witnesses. While this is an important factor, it is not so strong in this case that it can outweigh the considerable weight granted to plaintiff's choice of forum — particularly in light of the fact that plaintiff's principle place of business is in this forum and the fact that no other factor weighs in favor of transfer. Thus, transfer should be denied.

IV. CONCLUSION

For the reasons set forth above, defendants' motion to transfer (Docket # 111) is denied.

SO ORDERED.

Dated: August 16, 2018
       New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

insurance coverage in Florida to a woman who was hospitalized in Florida." Id. at 670. Neither the insured risk at issue here, nor the loss, occurred in Florida thus reflecting that Florida's local interest in this case is not commensurate with the interest it had in Cronin.