**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STARR INDEMNITY & LIABILITY COMPANY,

                    Plaintiff,

vs.                                                                              13 Civ. 8580 (GWG)

BRIGHTSTAR CORP. *et al.*,

                    Defendants.

## DECLARATION OF WILLIAM LANG IN SUPPORT OF PLAINTIFF'S MOTION TO SEAL DOCUMENTS

Pursuant to 28 U.S.C. § 1746, WILLIAM LANG declares under penalty of perjury as follows:

1.      I am a Senior Vice President and the Chief Underwriting Officer for ocean marine lines at Starr Marine Agency, Inc., which is a division of Starr Companies.  I have held these positions for over 10 years.  I have been employed by Starr Companies or its predecessor in an underwriting capacity, both at non-management and management levels, since January 1984.

2.      Starr Indemnity & Liability Company ("Starr Indemnity") is also a division of Starr Companies.

3.      I make this declaration in support of Starr Indemnity's application to keep under seal portions of two documents that were filed under seal by Brightstar Corp. and Brightstar Germany GmbH: (a) portions of Exhibit 9 to the Declaration of Charles P. Edwards, Esq. in Support of Brightstar's Notice of Motion for Partial Summary Judgment executed on May 25, 2018 (ECF Doc. 134); and (b) a part of the image taken from Exhibit 9 that appears on page 23 of Brightstar's Reply in Support of Motion for Partial Summary dated July 24, 2018 (ECF Doc. 148).

4.      This declaration is based upon my personal knowledge of the matters discussed herein.

5.      My major roles and responsibilities as the Chief Underwriting Officer include: (a) managing all technical underwriting activities of Starr Companies related to ocean marine lines; (b) establishing, implementing and monitoring underwriting strategy, policy, guidelines and controls consistent with Starr Companies objectives and directives related to ocean marine lines; (c) establishing appropriate internal underwriting procedures and criteria to control risk related to ocean marine lines; (d) ensuring the quality of underwriting and assuring that all underwriting strategy, policy, guidelines and controls are consistently applied throughout Starr Companies related to ocean marine lines; and (e) monitoring insurance market trends and developments in order to make adjustments as appropriate to underwriting strategy, policy, guidelines and controls related to ocean marine lines.

6.      I oversee 6 offices throughout the United States that conduct underwriting on behalf of Starr Indemnity.

7.      Marine cargo insurance is written almost exclusively on a manuscript basis.  A manuscript policy is custom made for a particular purpose and is tailored to meet the needs of a particular insured.  Each policy is individually negotiated by a broker on behalf of the insured and the underwriter.  (In this context, "underwriter" means an insurance company rather than an individual.)

8.      A marine cargo insurance policy contains numerous clauses, usually supplemented or amended by endorsement, concerning things such as insuring terms, attachment and duration of risk, conditions of coverage, valuation, deductibles, additional coverages, warranties, exclusions and duties in the event of a loss.  For example, the applicable marine

cargo insurance policy issued to Brightstar Corp. by Starr Indemnity had sixty-four clauses in the base form and forty-four endorsements at the time of the claimed loss.

9.     An underwriter typically has its own base form and endorsements for marine cargo insurance.

10.     Since at least 2010, Starr Indemnity has had its own base form and endorsements for marine cargo insurance.

11.     Brokers typically have their own base form and endorsements for marine cargo insurance.

12.     As a very general statement, broker forms and endorsements provide broader coverage and terms more favorable to an insured than an underwriter's form and endorsements.

13.     Starr Indemnity does business with several brokers throughout the United States, at least ten of whom have their own form and endorsements for marine cargo insurance.  In some instances, different brokers will have different variants of the same clause.

14.     Part of the negotiation between the broker and the underwriter is whether to use the underwriter's form and endorsements or the broker's form and endorsements.

15.     There are various broker clauses that Starr Indemnity is either unwilling to accept or will accept only with modification.  The difference between a broker's clause and Starr Indemnity's clause may only be a word or two.  However, while the difference in wording may be slight, the difference in effect can be profound.  Such nuanced differences can only be revealed by a meticulous reading of each clause.

16.     To ensure consistency throughout Starr Companies and to facilitate negotiation, Starr Companies created a Broker Form Guide that identifies the various broker clauses that Starr Indemnity is either unwilling to accept or will accept only with modification.  The guide is useful

in comparing what has been approved for competing broker forms, as well as understanding the severity of any clause that requires upper management approval for acceptance or modification. It is used for internal strategy and marketing purposes.

17.     I was personally involved in the creation of the original Broker Form Guide more than seventeen years ago.

18.     Since its creation, the Broker Form Guide has undergone several revisions to correspond with changes in the various broker clauses over the years.  I am personally involved in maintaining the Broker Form Guide up-to-date.

19.     Exhibit 9 is a revised version of the Broker Form Guide that was created in May 2012.  I was personally involved in the creation of Exhibit 9.

20.     The Broker Form Guide is a spreadsheet with six columns.  On a clause by clause basis, it (a) identifies the name of the broker clause, (b) identifies the broker who authored the clause, (c) provides the modifications required by Starr Indemnity, (d) states the priority level of such modifications, (e) states whether the modification can be waived and the level of management approval needed for such waiver and (f) provides sample clause wording.

21.     Starr Indemnity respectfully requests that the following information be kept under seal by way of redaction: (a) the modifications required by Starr Indemnity; (b) the priority level of such modifications; and (c) whether the modification can be waived and the level of management approval needed for such waiver.

22.     Starr Indemnity is not requesting that the name of the broker clause, the identity of the broker who authored the clause or the sample clause wording be redacted.  That said, Starr Indemnity would prefer that the identity of the brokers be redacted as well.

23.     The Broker Form Guide is an internal Starr Companies document that is not made available to the public.

24.     The Broker Form Guide is maintained on a password-protected server maintained by Starr Companies with access limited to employees with a need to know such information. These employees are advised of the confidential nature of the document.

25.     The Broker Form Guide is sensitive business information, and Starr Indemnity would suffer serious competitive harm if this non-public information were made public.  If a broker were to learn this non-public information, Starr Indemnity would be at a disadvantage in its negotiations with the broker because it would lose leverage on negotiating particular clauses. The broker would know the priority level of a required modification and whether the modification can ultimately be waived.  A broker would also be able to question why Starr Indemnity requires one of the broker's clauses to be modified while not requiring a similar modification to the corresponding clause of a competing broker.  Separately, if a competing underwriter were to learn this non-public information, it could tailor its product to compete with Starr Indemnity's product.  Marine cargo insurance is a highly competitive business, with underwriters offering similar coverages and terms.  Small tweaks to a competing underwriter's product can set it apart from Starr Indemnity's product, which may put Starr Indemnity at a competitive disadvantage.  For example, a competing underwriter might market itself either as offering a coverage that Starr Indemnity is unwilling to accept in a broker form or as not requiring a condition that Starr Indemnity requires be added to a broker form.

26.     The Broker Form Guide is the cumulative product of years of work.  Its creation required, among other things, (a) an extensive review of the various broker forms and endorsements, (b) a comparison of the clauses therein with the clauses in the underwriter's form

and endorsements, (c) deliberations within Starr Companies to decide which clauses are acceptable without modification, which clauses are unacceptable and which clauses are acceptable only with modification, and (d) the drafting of the required modifications. Each revision of the Broker Form Guide requires much of the same effort.

27.     The priority level of the modifications required by Starr Indemnity and whether such modifications can be waived and the level of management approval needed for such waiver cannot be properly acquired or duplicated by others because this information is based on internal Starr Companies deliberations and decision-making.

28.     The modifications required by Starr Indemnity cannot easily be properly acquired or duplicated by others. Someone would have to obtain a marine cargo insurance policy issued by Starr Indemnity, identify the broker who acted on behalf of the insured, obtain an unmodified version of the broker's form and endorsements and finally conduct a painstaking comparison of the policy as issued with the unmodified version. This process would then need to be repeated for every broker with whom Starr Indemnity does business that has its own form and endorsements. Even then, it may not be possible to duplicate the Broker Form Guide because the policies are manuscript and may not reflect every modification stated in the guide.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 30, 2019

WILLIAM LANG