**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STARR INDEMNITY & LIABILITY COMPANY,

                Plaintiff,

vs.

                                            13 Civ. 8580 (GWG)

BRIGHTSTAR CORP. and
BRIGHTSTAR GERMANY GmbH,

                Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION TO SEAL DOCUMENTS

NICOLETTI HORNIG & SWEENEY
Wall Street Plaza
88 Pine Street, Seventh Floor
New York, New York 10005
(212) 220-3830

*Attorneys for Plaintiff*

Of Counsel

    John A.V. Nicoletti
    Nooshin Namazi
    Kevin J.B. O'Malley

Case 1:13-cv-08580-GWG   Document 165   Filed 05/31/19   Page 2 of 15

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

PROCEDURAL BACKGROUND............................................................................................. 1

FACTUAL BACKGROUND .................................................................................................... 3

ARGUMENT ............................................................................................................................ 7

POINT I

    LEGAL STANDARD........................................................................................................ 8

POINT II

    THE CONTINUED SEALING OF THE INFORMATION IS WARRANTED ................... 11

    A.    There Are Higher Values That Warrant The Information Remain Sealed ................. 11

    B.    Starr Indemnity's Request Is Narrowly Tailored ....................................................... 11

CONCLUSION........................................................................................................................ 11

# TABLE OF AUTHORITIES

**Cases**

*Bernsten v. O'Reilly,*
  307 F. Supp. 3d 161 (S.D.N.Y. 2018).................................................................................. 8

*DiRussa v. Dean Witter Reynolds Inc.,*
  121 F.3d 818 (2d Cir. 1997)............................................................................................... 10

*Ferguson v. Ferrante,*
  No. 13 Civ. 4468, 2015 WL 3404140 (S.D.N.Y. May 27, 2015)........................................... 9

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.,*
  No. 14 MC 2542, 2014 WL 12772236 (S.D.N.Y. Nov. 5, 2014)........................................... 9

*Lugosch v. Pyramid Co. of Onondaga,*
  435 F.3d 110 (2d Cir. 2006)......................................................................................... 8, 9, 11

*New York v. Actavis, PLC,*
  No. 14 Civ. 7473, 2014 WL 5353774 (S.D.N.Y. Oct. 21, 2014) ....................................... 9-10

*Newsday LLC v. County of Nassau,*
  730 F.3d 156 (2d Cir. 2013)................................................................................................. 8

*Olvera v. Mazzone Mgmt. Grp. Ltd.,*
  No. 16 Civ. 502, 2018 WL 2137882 (N.D.N.Y. May 9, 2018) ........................................ 9, 10

*In re Parmalat Sec. Litig.,*
  258 F.R.D. 236 (S.D.N.Y. 2009) ...................................................................................... 9, 10

*Tropical Sails Corp. v. Yext, Inc.,*
  No. 14 Civ. 7582, 2016 WL 1451548 (S.D.N.Y. Apr. 12, 2016)..................................... 10, 11

**Other Authorities**

*Restatement (First) of Torts* ..................................................................................................... 11

## PRELIMINARY STATEMENT

In accordance with the Court's Order of May 23, 2019 (ECF Doc. 161), Plaintiff Starr Indemnity & Liability Company submits this memorandum of law in support of its application to keep under seal portions of two documents that were filed under seal by Defendants Brightstar Corp. and Brightstar Germany GmbH in connection with the parties' motions for summary judgment: (1) portions of Exhibit 9 to the Declaration of Charles P. Edwards, Esq. in Support of Brightstar's Notice of Motion for Partial Summary Judgment executed on May 25, 2018 (ECF Doc. 134); and (2) portions of Exhibit 9 that appear and are quoted on page 23 of Brightstar's Reply in Support of Motion for Partial Summary dated July 24, 2018 (ECF Doc. 148).

Starr Indemnity has no objection to any other documents that were filed under seal being made public. Most of these other documents were marked "Confidential" and/or filed under seal by Starr Indemnity to protect information that Brightstar may not want publicly disclosed. Starr Indemnity informed Brightstar of its intentions and advised that Brightstar should make the necessary application to the Court if there are any other documents that Brightstar believes should be kept under seal. These other documents include documents marked "Confidential" that were produced by third-parties Arthur J. Gallagher and Zurich American Insurance Company, who are or were Brightstar's broker and insurer, respectively.

## PROCEDURAL BACKGROUND

The Court entered a Stipulated Protective Order on October 21, 2014 (ECF Doc. 36) that states, in part:

**2.      "Confidential Information" Defined**

… Any document, information or thing may be designated "CONFIDENTIAL" if it is in good faith determined by the producing party to contain confidential, commercially sensitive or proprietary information, including information related to any of the following: technical data, research and

development information, marketing or other business plans, product or service
information, product formulations and recipes; information identifying the
constituent elements and proportions thereof, customer information, trade secrets,
competitive information or financial information of the party or any other
information of such sensitivity to warrant CONFIDENTIAL treatment ….

* * *

7.    **Court Procedures**

Pleadings or other papers filed with or otherwise submitted to the Court that
contain or annex Confidential Information shall be filed in sealed envelopes on
which shall be endorsed the title and case number of these actions, an indication of
the nature of the contents of the sealed envelope or other container, the word
"CONFIDENTIAL" and the following statement: "Filed Under Seal Pursuant To
Protective Order."  Any such pleadings or other papers shall not be filed or served
electronically but, instead, shall be filed and served in accordance with the Clerk of
Court's Sealed Record Filing Instructions.  Any such pleading or other paper shall
remain sealed during the pendency of these actions, and at the final disposition of
these actions shall be returned by the Clerk of the Court to the party who filed same.

Stipulated Protective Order ¶¶ 2 & 7.

Starr Indemnity produced numerous documents in the course of discovery that it marked

"Confidential," which broadly fall into two categories.   First, Starr Indemnity marked as

"Confidential" documents that it believed contain Starr Indemnity's confidential and commercially

sensitive information.   Such information includes: internal guidelines; internal procedures; and

internal deliberations concerning policy negotiations.

Second, Starr Indemnity marked as "Confidential" documents that it believed contain

Brightstar's confidential and commercially sensitive information.   Such information includes:

financial information of Brightstar Corp., which is a privately held company[1]; the locations and

values of electronic devices that are highly susceptible to theft; security measures in place at these

locations; and methods and routes of the shipment of electronic devices that are highly susceptible

---

[1]  *See, e.g.*, Reuters, *SoftBank to spend $1.26 billion for majority Brightstar stake*, *available at*
www.reuters.com/article/us-brightstar-softbank/softbank-to-spend-1-26-billion-for-majority-brightstar-stake-
idUSBRE99H0NA20131018 (last visited May 30, 2019).

to theft.  Most of the documents that were filed under seal by the parties in connection with the motions for summary judgment fall into this second category.

Starr Indemnity submitted papers to the Court in connection with the parties' motions for summary judgment that contain or annex "Confidential Information" as defined in the Stipulated Protective Order.  In accordance with that Order, and both to not waive confidentiality as to its own information and to protect Brightstar's confidential information, Starr Indemnity filed these papers under seal.  Starr Indemnity apologizes to the Court for filing its entire reply brief and its entire Local Civil Rule 56.1 reply statement under seal rather than filing these documents publicly with specific portions redacted.  Starr Indemnity does not seek to keep these documents under seal, either in whole or in part, because the confidential information contained in these documents is Brightstar's.  As to its own confidential information, Starr Indemnity maintains that such information is confidential but, in light of the case law applicable to sealed documents, Starr Indemnity does not seek to keep under seal anything other than portions of Exhibit 9 to the Edwards Declaration and Brightstar's reply brief.

## FACTUAL BACKGROUND

Starr Indemnity is a division of Starr Companies.  Declaration of William Lang in Support of Plaintiff's Motion to Seal Documents ("Lang Decl.") executed on May 30, 2019 ¶ 2.[2]  There are six offices throughout the United States that conduct underwriting on behalf of Starr Indemnity.  *Id.* ¶ 6.

Marine cargo insurance is written almost exclusively on a manuscript basis.  *Id.* ¶ 7.  A manuscript policy is custom made for a particular purpose and is tailored to meet the needs of a

---

[2] Mr. Lang is Chief Underwriting Officer for ocean marine lines at Starr Marine Agency, Inc., which is a division of Starr Companies.  Lang Decl. ¶ 1.  He was personally involved in the creation and revisions of the Broker Form Guide, including Exhibit 9.  *Id.* ¶¶ 17-19.

particular insured.  *Id.*  Each policy is individually negotiated by a broker on behalf of the insured and the underwriter.  *Id.*  (In this context, "underwriter" means an insurance company rather than an individual.  Lang Decl. ¶ 7)

A marine cargo insurance policy contains numerous clauses, usually supplemented or amended by endorsement, concerning things such as insuring terms, attachment and duration of risk, conditions of coverage, valuation, deductibles, additional coverages, warranties, exclusions and duties in the event of a loss.  *Id.* ¶ 8.  For example, the applicable marine cargo insurance policy issued to Brightstar Corp. by Starr Indemnity had sixty-four clauses in the base form and forty-four endorsements at the time of the claimed loss.  *Id.*

An underwriter typically has its own base form and endorsements for marine cargo insurance.  *Id.* ¶ 9.  Since at least 2010, Starr Indemnity has had its own base form and endorsements for marine cargo insurance.  *Id.* ¶ 10.  Brokers also typically have their own base form and endorsements for marine cargo insurance.  Lang Decl. ¶ 11.  As a very general statement, broker forms and endorsements provide broader coverage and terms more favorable to an insured than an underwriter's form and endorsements.  *Id.* ¶ 12.  Starr Indemnity does business with several brokers throughout the United States, at least ten of whom have their own form and endorsements for marine cargo insurance.  *Id.* ¶ 13.  In some instances, different brokers will have different variants of the same clause.  *Id.*

Part of the negotiation between the broker and the underwriter is whether to use the underwriter's form and endorsements or the broker's form and endorsements.  *Id.* ¶ 14.  There are various broker clauses that Starr Indemnity is either unwilling to accept or will accept only with modification.  Lang Decl. ¶ 15.  The difference between a broker's clause and Starr Indemnity's clause may only be a word or two.  *Id.*  However, while the difference in wording may be slight,

the difference in effect can be profound.  *Id.*  Such nuanced differences can only be revealed by a meticulous reading of each clause.  *Id.*

To ensure consistency throughout Starr Companies and to facilitate negotiation, Starr Companies created a Broker Form Guide that identifies the various broker clauses that Starr Indemnity is either unwilling to accept or will accept only with modification.  *Id.* ¶ 16.  The guide, which was first created more than seventeen years ago, is useful in comparing what has been approved for competing broker forms, as well as understanding the severity of any clause that requires upper management approval for acceptance or modification.  Lang Decl. ¶¶ 16 & 17.  It is used for internal strategy and marketing purposes.  *Id.* ¶ 16.  Since its creation, the Broker Form Guide has undergone several revisions to correspond with changes in the various broker clauses over the years.  *Id.* ¶ 18.

Exhibit 9 to the Edwards Declaration is a revised version of the Broker Form Guide that was created in May 2012.  *Id.* ¶ 19.  On page 23 of its reply brief, Brightstar included an image taken from Exhibit 9 and also quoted from the exhibit.

The Broker Form Guide is a spreadsheet with six columns.  *Id.* ¶ 20.  On a clause by clause basis, it (1) identifies the name of the broker clause, (2) identifies the broker who authored the clause, (3) provides the modifications required by Starr Indemnity, (4) states the priority level of such modifications, (5) states whether the modification can be waived and the level of management approval needed for such waiver and (6) provides sample clause wording.  Lang Decl. ¶ 20.

In support of its assertion that information in Exhibit 9 to the Edwards Declaration and on page 23 of Brightstar's reply brief is sensitive, non-public information the public release of which would cause it to suffer serious competitive harm, Starr Indemnity makes the following proffer:

(1)      The Broker Form Guide is an internal Starr Companies document that is not made available to the public.  *Id.* ¶ 23.

(2)      Access to the Broker Form Guide is limited to employees with a need to know such information.  *Id.* ¶ 24.

(3)      The Broker Form Guide is maintained on a password-protected server maintained by Starr Companies.  The employees with access to the guide are advised of the confidential nature of the document.  *Id.*

(4)      The Broker Form Guide is sensitive business information, and Starr Indemnity would suffer serious competitive harm if this non-public information were made public.  *Id.* ¶ 25. If a broker were to learn this non-public information, Starr Indemnity would be at a disadvantage in its negotiations with the broker because it would lose leverage on negotiating particular clauses. Lang Decl. ¶ 25.  The broker would know the priority level of a required modification and whether the modification can ultimately be waived.  *Id.*  A broker would also be able to question why Starr Indemnity requires one of the broker's clauses to be modified while not requiring a similar modification to the corresponding clause of a competing broker.  *Id.*  Separately, if a competing underwriter were to learn this non-public information, it could tailor its product to compete with Starr Indemnity's product.  *Id.*  Marine cargo insurance is a highly competitive business, with underwriters offering similar coverages and terms.  *Id.*  Small tweaks to a competing underwriter's product can set it apart from Starr Indemnity's product, which may put Starr Indemnity at a competitive disadvantage.  Lang Decl. ¶ 25.  For example, a competing underwriter might market itself either as offering a coverage that Starr Indemnity is unwilling to accept in a broker form or as not requiring a condition that Starr Indemnity requires be added to a broker form.  *Id.*

(5)     The Broker Form Guide is the cumulative product of years of work.  *Id.* ¶ 26.  Its creation required, among other things, (a) an extensive review of the various broker forms and endorsements, (b) a comparison of the clauses therein with the clauses in the underwriter's form and endorsements, (c) deliberations within Starr Companies to decide which clauses are acceptable without modification, which clauses are unacceptable and which clauses are acceptable only with modification, and (d) the drafting of the required modifications.  *Id.*  Each revision of the Broker Form Guide requires much of the same effort.  *Id.*

(6)     The priority level of the modifications required by Starr Indemnity and whether such modifications can be waived and the level of management approval needed for such waiver cannot be properly acquired or duplicated by others because this information is based on internal Starr Companies deliberations and decision-making.  Lang Decl. ¶ 27.

The modifications required by Starr Indemnity cannot easily be properly acquired or duplicated by others.  *Id.* ¶ 28.  Someone would have to obtain a marine cargo insurance policy issued by Starr Indemnity, identify the broker who acted on behalf of the insured, obtain an unmodified version of the broker's form and endorsements and finally conduct a painstaking comparison of the policy as issued with the unmodified version.  *Id.*  This process would then need to be repeated for every broker with whom Starr Indemnity does business that has its own form and endorsements.  *Id.*  Even then, it may not be possible to duplicate the Broker Form Guide because the policies are manuscript and may not reflect every modification stated in the guide.  *Id.*

## ARGUMENT

Starr Indemnity respectfully requests that the following information in Exhibit 9 to the Edwards Declaration and on page 23 of Brightstar's reply brief be kept under seal by way of redaction: (1) the modifications required by Starr Indemnity; (2) the priority level of such

modifications; and (3) whether the modification can be waived and the level of management approval needed for such waiver.  Starr Indemnity is not requesting that the name of the broker clause, the identity of the broker who authored the clause or the sample clause wording be redacted.

Accompanying this application is a copy of Exhibit 9 to the Edwards Declaration and a copy of page 23 from Brightstar's reply brief with the proposed redactions filed on ECF and a courtesy copy of the unredacted versions sent to Chambers with the proposed redactions outlined by a red box.  *See* Exhibits "1" & "2" to Declaration of Kevin J.B. O'Malley in Support of Plaintiff's Motion to Seal Documents executed on May 31, 2019.

**POINT I**

**<u>LEGAL STANDARD</u>**

"There is a long-established 'general presumption in favor of public access to judicial documents.' "  *Bernsten v. O'Reilly*, 307 F. Supp. 3d 161, 165 (S.D.N.Y. 2018) (quoting *Collado v. City of New York*, 193 F. Supp. 3d 286, 288 (S.D.N.Y. 2016)).  "Federal courts employ two related but distinct presumptions in favor of public access to court proceedings and records: a strong form rooted in the First Amendment and a slightly weaker form based in federal common law." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013).

Starr Indemnity acknowledges that Exhibit 9 to the Edwards Declaration and Brightstar's reply brief are judicial documents to which a strong presumption of public access attaches under both the common law and the First Amendment.  *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 121 (2d Cir. 2006).  As to the weight of the presumption given to such documents, the Second Circuit has stated that "the presumption is of the highest: 'documents used by parties moving for, or opposing, summary judgment should not remain under seal *absent the most compelling reasons*.' "  *Id.* at 123 (quoting *Joy v. North*, 692 F.2d 880 (2d Cir.1982)) (italics in original).

"Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand." *Id.* at 124.  Under "the more stringent First Amendment framework [ ], continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim." *Id.* (citing *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)).

"Higher values" may include the protection of commercially sensitive business information, which need not be a trade secret.  *See, e.g.*, *Olvera v. Mazzone Mgmt. Grp. Ltd.*, No. 16 Civ. 502, 2018 WL 2137882, at *2 (N.D.N.Y. May 9, 2018); *Ferguson v. Ferrante*, No. 13 Civ. 4468, 2015 WL 3404140, at *2 (S.D.N.Y. May 27, 2015); *In re Parmalat Sec. Litig.*, 258 F.R.D. 236, 244 (S.D.N.Y. 2009).  "The need to protect sensitive commercial information from disclosure to competitors seeking an advantage may constitute such an interest."  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, No. 14 MC 2542, 2014 WL 12772236, at *2 (S.D.N.Y. Nov. 5, 2014) (citing *U.S. v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995)); *see also Parmalat*, 258 F.R.D. at 244 (holding that courts can seal "business information that might harm a litigant's competitive standing"); *New York v. Actavis, PLC*, No. 14 Civ. 7473, 2014 WL 5353774, at *3 (S.D.N.Y. Oct. 21, 2014) (same).

"Internal documents and unpublished drafts that contain non-public strategies and financial information constitute 'confidential commercial information' under Federal Rule 26(c)(1)(g), particularly where the disclosing company is engaged in a highly competitive industry and deliberately has shielded such information from its competitors." *Actavis*, 2014 WL 5353774 at

*3 (citations omitted); *see also Tropical Sails Corp. v. Yext, Inc.*, No. 14 Civ. 7582, 2016 WL 1451548, at *4 (S.D.N.Y. Apr. 12, 2016).

"Although business information need not be a 'trade secret' in order to remain sealed or redacted, district courts in the Second Circuit consider trade secret law 'in determining whether information is sufficiently valuable and secret to afford an actual or potential economic advantage over others.' " *Olvera*, 2018 WL 2137882 at *2 (quoting *Parmalat*, 258 F.R.D. at 245).

> Courts apply the following six factors set forth in the Restatement (First) of Torts § 757, comment b, when determining the existence of a trade secret:
>
> > (1) the extent to which the information is known outside of [the] business; (2) the extent to which it is known by employees and others involved in [the] business; (3) the extent of measures taken by [the business] to guard the secrecy of the information; (4) the value of the information to [the business] and [its] competitors; (5) the amount of effort or money expended by [the business] in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Id.* (quoting *Parmalat*, 258 F.R.D. at 245; citing *E.E.O.C. v. Kelley Drye & Warren LLP*, No. 10 Civ. 655, 2012 WL 691545, at *3 (S.D.N.Y. Mar. 2, 2012); *King Pharms., Inc. v. Eon Labs, Inc.*, No. 04 Civ. 5540, 2010 WL 3924689, at *6 (E.D.N.Y. Sept. 28, 2010)).

"The burden of demonstrating that a document submitted to a court should be sealed rests on the party seeking such action ...." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 826 (2d Cir. 1997) (citing *Amodeo*, 71 F.3d at 1047).  To meet this burden, Starr Indemnity "must make a particular and specific demonstration of fact showing that disclosure would result in an injury sufficiently serious to warrant protection; broad allegations of harm unsubstantiated by specific examples or articulated reasoning fail to satisfy the test." *Parmalat*, 258 F.R.D. at 244 (citations omitted).

**POINT II**

**THE CONTINUED SEALING OF THE
INFORMATION IS WARRANTED**

A.     **There Are Higher Values That Warrant
        The Information Remain Sealed**

Starr Indemnity respectfully submits that the factual proffer made in the Factual Background, *supra*, is a particular and specific demonstration of fact showing that disclosure of the identified information in Exhibit 9 to the Edwards Declaration and on page 23 of Brightstar's reply brief would result in an injury sufficiently serious to warrant protection. *See generally* Lang Decl.   More specifically, the factual proffer addresses each of the six factors set forth in *Restatement (First) of Torts* § 757, comment b.   *See id.* ¶¶ 23-28.   If made public, this commercially sensitive business information may harm Starr Indemnity's competitive standing in the market. Therefore, there are higher values that exist to overcome the right of access.   *See*, *e.g.*, *Tropical Sails*, 2016 WL 1451548 at *4-*5.

B.     **Starr Indemnity's Request Is Narrowly Tailored**

Even when the proponent establishes that higher values exist to overcome the right of access, the Court must determine whether the proposed method of protecting those values is narrowly tailored to achieve that aim.   *Lugosch*, 435 F.3d at 124.

Starr Indemnity does not seek to keep the entirety of either Exhibit 9 to the Edwards Declaration or Brightstar's reply brief under seal.   Rather, it requests the redaction of only those portions of the documents that contain commercially sensitive business information.

**CONCLUSION**

Starr Indemnity respectfully requests that its application be granted.

Dated:  New York, New York
          May 31, 2019

11

NICOLETTI HORNIG & SWEENEY
*Attorneys for Plaintiff*


By:     S/ John A.V. Nicoletti
        John A.V. Nicoletti
        Nooshin Namazi
        Kevin J.B. O'Malley
        Wall Street Plaza
        88 Pine Street, Seventh Floor
        New York, New York 10005
        (212) 220-3830
        jnicoletti@nicolettihornig.com
        nnamazi@nicolettihornig.com
        komalley@nicolettihornig.com